### THE ANTHRACITE.

### THE WILLIAM E. CLEARY.

(District Court, S. D. New York. April 1, 1908.)

TOWAGE—INJURY TO TOW—LIABILITY OF TUGS ACTING JOINTLY.

Where two tugs are acting jointly in towing a vessel, and an accident happens to the tow through their negligence, both tugs are liable, notwithstanding the fact that one is acting as a helper, under the orders of the master of the other.

In Admiralty.

Alexander & Ash, for libellants.
Carpenter, Park & Symmers, for the Anthracite.
Amos Van Etten, for the William E. Cleary.

ADAMS, District Judge. This action was brought by William K. Hammond and others, the owners of the barge Sylvia, and cargo of brick laden on board, against the tugs Anthracite and William E. Cleary to recover the damages, said to amount to about $4,000, caused by the barge striking Mill Rock, while proceeding in tow, on a hawser, of said tugs from the North River to 139th Street, Harlem River, on the 27th of July, 1907. The Sylvia was the starboard boat in the last tier. The tide was flood and when in the vicinity of Mill Rock, the tugs turned toward New York to land one of the boats there and in doing so swung the Sylvia against Mill Rock, causing the damages complained of.

The answers of the tugs pleaded that there was no fault on their part but that the accident was due to another tow forcing this one toward the rock. No reliance, however, was placed upon such contention on the trial, and indeed there was no ground for it, as the other tow had passed when the swing was made.

The Anthracite does not attempt to escape liability but frankly concedes her fault. The Cleary, however, urges that the Anthracite was

the directing mind and the Cleary merely a helper without responsibility and therefore not in fault.

It appears that the Anthracite was in charge of the tow. Up to the vicinity of Newtown Creek the Cleary had been engaged in taking boats out of the tow and delivering them at their destinations. There she placed herself alongside of the Anthracite and made fast to her abaft of the latter's pilot house, so as not to interfere in any way with the view of the master at the wheel. The steering was done by the Anthracite, whose master directed the proceedings on the part of the Cleary. When the vicinity of the rock was reached, the latter was directed to hook up and doubtless the Anthracite also did so, but the efforts were without avail, and the collision took place. The master of the Cleary testified to the foregoing facts and that the master of the Anthracite had charge of the navigation of his tug and the Cleary, both tugs being engaged in pulling. The Cleary urges that as she was acting as a mere helper to the Anthracite, which was conducting the navigation, she cannot be held, citing The Connecticut, 103 U. S. 710, 26 L. Ed. 467, and The W. G. Mason, 142 Fed. 913, 74 C. C. A. 83.

In the former case, the Connecticut was towing a large fleet of boats, assisted by the tug Stevens, and brought one of the boats of her tow in collision with the steamer Othello. One of the questions presented on appeal was should the Stevens have been held as well as the Connecticut and the Othello. In delivering the opinion of the court, Mr. Chief Justice Waite said (page 712 of 103 U. S. [26 L. Ed. 467]):

"The tug 'Stevens' was a mere helper, and subject to the orders of the 'Connecticut.' The owners of the 'Sam. Morgan' sued all three of the vessels for the loss, and upon the facts as above stated the Circuit Court gave judgment dismissing the libel as to the 'Stevens,' but holding both the 'Connecticut' and 'Othello' responsible, and dividing the loss between them. The 'Connecticut' was held in fault for not giving her signal at or before the time she changed her course, and the 'Othello' for not heeding the signal when it was given, or taking the necessary precautions against a collision before. All parties have appealed; the libellants because the 'Stevens' was acquitted, and the 'Connecticut' and the 'Othello' each because they were respectively charged with any portion of the loss.

So far as the 'Stevens' is concerned, she was clearly not to blame. She was the mere servant of the 'Connecticut,' and could exercise no will of her own. She was bound to obey orders from the 'Connecticut,' and no part of the responsibility of the navigation, so far as the approaching vessel was concerned, was on her. It was not her duty to signal the movements of the 'Connecticut,' under whose exclusive control she was. The 'Connecticut' is alone responsible for the consequences of her own faults."

That was a case where the collision happened by reason of the absence of proper signals and in that respect is unlike this case.

In The Mason, two tugs, the Mason and the Babcock, were towing the steamer Gratwick and the latter stranded through the negligence, as was found by the district court, of both tugs. The Mason was the leading tug and the dominant mind in the venture; the Babcock was guiding the steamer from astern. Judge Hazel thought that the Babcock was liable as well as the Mason, because the authorities seemed to so hold, particularly The Bordentown (D. C.) 40 Fed. 683; The Columbia, 73 Fed. 226, 19 C. C. A. 436. On appeal, however, the Bab-

cock was exonerated, the Court of Appeals in an opinion by Wallace, J., stating (page 915 of 142 Fed., page 85 of 74 C. C. A.):

"As the proof did show that the Babcock properly performed her part of the service, the responsibility for the disaster must rest on the Mason alone."

And further (pages 916, 917, 918, of 142 Fed., pages 86, 87, of 74 C. C. A.):

"The authorities cited in the opinion of the court below, and upon the argument at bar, are, The Arturo (D. C.) 6 Fed. 308; The Bordentown (D. C.) 40 Fed. 683; The Columbia, 73 Fed. 226, 19 C. C. A. 436; and Van Eyken v. Erie R. Co. (D. C.) 117 Fed. 717.

The Arturo was a case in which two tugs, belonging to different owners, while performing a towage service, stranded the tow upon a shoal; both tugs being in command of the master of one of the tugs. The decision was that both were liable because both were in fault. Judge Lowell in his opinion, after stating that, if one tug was wholly in fault, she alone would be responsible, says:

'But for their joint action, so far as it conduced to the loss, I hold them to be jointly responsible.'

The Bordentown was a case in which Judge Brown held both the Bordentown and the Winnie, tugs engaged in a towage service, liable for the fault of the master of the Bordentown. Both tugs were owned by the same owner, and the master of the Bordentown was in command of both. Judge Brown said:

'At the time when the master's fault arose the Winnie was as much a part of the moving power as the Bordentown, and was equally under the same direction. She belonged to the same owners, and from the beginning to the end she was engaged, in the owner's behalf, in the work of towing the other boats, precisely as the Bordentown was engaged. It was immaterial on board which tug the master for the time being was, or from which boat his orders were given. Both as related to the owners of the tugs, and as related to the owners of the boats in tow, the Bordentown and the Winnie, in taking the tow through the Kills, were in effect one vessel.'

In The Columbia it was held that, where the owner of a barge which had no motive power had undertaken to transport freight upon the barge, such barge and a tug, belonging to the same owner, by which the motive power was supplied, became one vessel for the purposes of the voyage, and that the owner was not entitled to limit his liability for damages caused by the negligence of the crew of either craft, without surrendering both.

Van Eyken v. Erie R. Co. was an action in personam to recover damages to the steamship Folmina from a collision between that vessel and the tug Shohola, which occurred in consequence of the breaking down of the tug's machinery while she was towing a barge. The tug and the barge were lashed together, and were both owned by the respondent, and the question arose whether the owner in limitation of liability was obliged to surrender the barge, as well as the tow. The court in its opinion (Judge Thomas) repudiated the argument that both were liable because both 'formed a common united instrument of commerce, moving as an entirety, when the tort was committed,' and held that, as the cause of the injury was the disordered steering-gear of the tug, the tug alone was liable, and the respondent was therefore entitled to limit his liability on surrendering the tug alone.

It will be observed that of these adjudications only two (The Bordentown and The Columbia) decide the question now presented; while in the other two, notwithstanding the master of the offending tug was in command of the other vessel sought to be held, exonerated that vessel. It will also be observed that in the two cases in which the vessel not in fault was exonerated, in one of them she was without motive power and was lashed to the offending tug, and in the other she was a tug engaged jointly with the offending tug in performing the towage service. In The Bordentown it was said not to be enough that both vessels were under the command of the same master, and in The Columbia the fact that each was under command of her own master was treated as immaterial."

The court then discussed the cases of the United States v. Brig Malek Adhel, 2 How. 210, 11 L. Ed. 239, The China, 7 Wall. 53, 19 L. Ed. 67, Homer Ramsdell Transp. Co. v. La Compagnie Generale Trans-Atlantique, 182 U. S. 406, 21 Sup. Ct. 831, 45 L. Ed. 1155, Ralli v. Troop, 157 U. S. 386, 403, 15 Sup. Ct. 657, 39 L. Ed. 742, Workman v. New York City, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314, and The Barnstable, 181 U. S. 464, 21 Sup. Ct. 684, 45 L. Ed. 954, and further said:

"If, as these authorities assert, the personal liability of the owner is not an element in determining the liability of a vessel in rem for wrongs or torts, the decision in The Bordentown and The Columbia, so far as they were based upon the contrary consideration, were erroneous. The observations in those cases, to the effect that the two vessels were to be regarded as one for the purposes of the joint undertaking, have not the remotest bearing upon the question of their respective liabilities in rem. A tug and her tow are deemed a single vessel under steam, within the meaning of the rules of navigation for preventing collision; but it has never been asserted elsewhere that they could be regarded as one vessel for the purpose of ascertaining their relations as between themselves, or their several liabilities to respond for the consequences of a fault of one of them. Even when two vessels are lashed together, the question of the liability of each always depends upon ascertaining whether that vessel was in fault. The James Gray v. The John Fraser, 21 How. 184, 16 L. Ed. 106; Sturgis v. Boyer, 24 How. 110, 16 L. Ed. 591; The Carrie L. Tyler, 106 Fed. 422, 45 C. C. A. 374, 54 L. R. A. 236."

This decision is of course binding here, but I do not think it governs this case. The Babcock's part of the navigation was aiding in pulling at the stern of the towed vessel, while the Mason was leading and guiding the navigation forward. It was easy to find there that the latter was solely liable. In addition to the language above quoted, Judge Wallace said (pages 915, 916 of 142 Fed., pages 85, 86 of 74 C. C. A.):

"The evidence indicates that the Mason as the pilot tug was expected to, and did, take the initiative in directing the movements of the Gratwick, but that in other respects the navigation of the Babcock was exclusively under the control of her own master, and, although the tugs were co-operating in the same general undertaking, each was acting independently in doing her own part of the work."

Here the Cleary submitted herself entirely to the commands of the master of the Anthracite and apparently joined herself to the Anthracite simply to add to the latter's power. It would seem unjust under the circumstances to deprive the libellants of their apparent right against both vessels, which were being used for a common purpose and in effect as one vessel.

This case is within the ruling in The Arturo, cited by Judge Wallace, supra, with approval of the language of Judge Lowell, where he held, that both tugs should be held for their joint action so far as it conduced to the loss. In that case, two tugs belonging to different owners undertook to tow a barkentine, and made fast on each quarter. They backed the vessel out of the dock and she almost immediately grounded. Both were held in fault in the district court, and one of the tugs which had gone to the assistance of the other, appealed. It was said by Lowell, J., on the appeal (pages 312, 313, of 6 Fed.):

"The transaction appears to me, as to the district judge, to be, in effect, several contracts for a joint operation. If, therefore, one tug was wholly

in fault, as by a defect of her machinery or the like, she alone would be responsible. But for their joint action, so far as it conduced to the loss, I hold them to be jointly responsible. And that is this case."

\* \* ∘ \* \* \* \* \* \* \* \* \* \*

"There is no question that the navigation was so negligently conducted that, in broad daylight, with obvious conditions of wind and tide, the ship was landed upon a well-known shoal. There is none that Captain Chase" (the tug Cottingham) "should have taken a line to the wharf, or have provided, in some other of the modes suggested by the experts, for counteracting the effect of the wind and tide; nor that Captain Scollay's tug" (the tug Nabby C.) "without any fault of his, or his crew, aided to run the ship aground.

In this state of facts, both tugs are liable for the damage."

The Arturo seems to be in point. There could be no doubt that it would cover this case were it not for the fact that The Bordentown (affirmed on appeal, not reported) and The Columbia, supra, were in effect overruled by the decision on appeal in The Mason. In The Bordentown, the Winnie acted as a helper, running ahead of the tow on a hawser attached to the Bordentown. In The Mason, it was said that The Bordentown and The Columbia decisions should be regarded as erroneous, so far as they were in conflict with The Mason. It is difficult to distinguish The Bordentown from the present case. The Columbia was a barge in tow of a steamer and in that respect different. I think, however, that the principle of The Arturo should be controlling here.

Decree against both tugs, with an order of reference.