### SHIPOWNERS' & MERCHANTS' TUGBOAT CO. v. HAMMOND LUMBER CO.†

(Circuit Court of Appeals, Ninth Circuit. November 17, 1914.)

#### No. 2388.

1. SHIPPING (§ 209*)—LIMITATION OF LIABILITY—LOSS OF TOW—TUGS EMPLOYED IN COMMON VENTURE.

Where two tugs belonging to the same owner were co-operating in the towing of a raft of logs, which was lost, the hawser of one being made fast to the forward bitts of the other, which was attached directly to the raft, so that they were towing tandem, if either tug is liable for the loss of the tow, both are liable, and both must be surrendered in a proceeding by the owner for a limitation of liability.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–655, 659, 661, 662; Dec. Dig. § 209.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

218 F.—11        † Rehearing denied March 8, 1915.

2. SHIPPING ℩§ 209*)—PROCEEDING FOR LIMITATION OF LIABILITY—GROUNDS
FOR DISMISSAL.

Where there is but a single claim against a vessel owner, for which a limitation· of liability is sought upon which an action has been brought to recover judgment in a state court, and the value of the vessels involved largely exceeds the amount of such claim, the proceeding should be dismissed.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–655, 659, 661, 662; Dec. Dig. § 209.*

Limitation of owner's liability, see note to The Longfellow, 45 C. C. A. 387.]

Appeal from the District Court for the First Division of the United States for the Northern District of California; Maurice T. Dooling, Judge.

In the matter of the petition of the Shipowners' & Merchants' Tugboat Company, owner of, the tugs Dauntless and Hercules, for limitation of liability; the Hammond Lumber Company, damage claimant. From a decree dismissing the petition, petitioner appeals. Affirmed.

For opinion below, see 212 Fed. 455.

The appellant filed in the court below its petition for a limitation of liability, and alleged therein that it was the owner of the steam tugs Dauntless and Hercules; that on September 9, 1911, the appellee delivered a large raft of piling to the master of the Dauntless at Astoria, Or., to be towed to the port of San Francisco; "that the tug made fast to the raft by means of a long steel towing hawser, attached to a towing machine on the tug; that the master of the Dauntless was unable to procure the services of a bar tug to assist him with the raft out of the Columbia river and across the bar at the entrance thereof, and that thereupon he called to his assistance the tug Hercules, which made fast by a line attached to the towing machine on the Hercules, and to the forward bitts of the Dauntless; that the tugs proceeded with the raft toward the open sea, and by the usual channel taken by vessels proceeding to sea; that in their progress the raft stuck, and the tugs were unable to make headway with it, and at the same time the tide began to ebb, and by reason of the sea and tide the raft became unmanageable, and, despite the efforts of the tugs, the raft was gradually turned and swept broadside against ·the sea until the after end thereof tailed off towards the breakers, and the raft pulled the towing hawser off the towing machine on the Dauntless and being clear became a total loss; that the loss of the raft occurred without the consent, privity, knowledge, design, or neglect of the petitioner; that the appelʹee, the owner of the raft, has commenced in the circuit court for Clatsop county, state of Oregon, an action wherein recovery is sought in the sum of $71,249.71, the alleged value of the raft and its equipment; that the petitioner desires to contest its liability and that of each of said tugs for the loss of the raft, and claims the benefit of a limitation of liability, as provided in sections 4282 to 4289, inclusive, of the Revised Statutes (Comp. St. 1913, §§ 8020–8027), and the other limited liability statutes enacted thereafter. And the petitioner alleged that, while not admitting its liability for the loss, it was entitled to have its liability ʹif any, limited to the value of the Dauntless, or, if not, to the value of the two tugs. Thereupon the Dauntless and Hercules were duly appraised; the value of the former was found to be the sum of $45,000, and the latter the sum of $70,000; and the petitioner was directed to file undertakings in those sums, conditioned for the payment into court of the values of the tugs as determined in the appraisal. Thereupon a monition was issued, citing all persons claiming damages or loss occurring upon said voyage of the tugs to appear and make proof of their claims before the commissioner, and in response thereto the appellee appeared and filed its claim, claiming the value of the raft in the sum of $71,249.90.

The answer of the claimant alleged that the loss of the raft was occasioned

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the neglect of the petitioner, its officers, and servants, and of said tugs. The answer alleged also the commencement of the action in the circuit court of Clatsop county on November 9, 1911, and it alleged that the Hercules was pulling upon the tug Dauntless at the time when the raft broke away, and that the power of the Hercules so applied actually contributed to the force which caused the raft to break away, and that the Hercules being in the lead of the tandem of tugs necessarily participated in choosing the path through which the tugs and tow passed.

On October 23, 1913, the appellee filed a motion for the dismissal of the petition, on the ground that there was but one claimant, and that default had been taken against all other persons who might claim damages, loss, or injury, and that the total value of the tugs were greatly in excess of the appellee's claim. The motion to dismiss was allowed, and an order was made directing the dismissal of the limitation proceedings as to the appellee, but retaining jurisdiction thereof for the protection of the petitioner against any other possible claimants.

Edward J. McCutchen, Ira A. Campbell, and McCutchen, Olney & Willard, all of San Francisco, Cal., for appellant.

William Denman and Denman & Arnold, all of San Francisco, Cal. (W. S. Burnett, of San Francisco, Cal., of counsel), for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). In the court below the motion to dismiss was based on two grounds: (1) That only one claim was made against the tugs; and (2) that the amount thereof was much less than the appraised value of the tugs, and that for those reasons there was no occasion for limitation of liability, and no reason for depriving the claimant of its common-law remedy of trial by jury. On the latter ground the motion was allowed. The decision in White v. Island Transportation Co., 233 U. S. 346, 34 Sup. Ct. 589, 58 L. Ed. 993, may be accepted as establishing the rule that the limited liability acts of Congress authorize a proceeding for limitation of liability "whether there be a plurality of claims or only one."

[1] But it is urged that the court below erred in holding that both the tugs, being engaged in the same venture, were equally liable, if liable at all, though the Dauntless was the only one directly attached to the raft, and in holding that, since the value of the two tugs greatly exceeded the amount of the claim, there was no occasion for limitation of liability. The appellant, while not contending that the test question in determining whether the value of a vessel should be included in the fund is whether it is itself liable in rem for the injury done, asserts that the ultimate inquiry is limited to the question whether or not the vessel, or her officers or crew, are at fault, and it argues that there is nothing appearing in the record to indicate that the Hercules was at fault, and that, in any event, it was error to dismiss the petition without having heard testimony as to whether there was any fault, and upon which tug, if either, the blame should be placed

We think that enough is alleged in the appellant's petition to show that if either tug was liable to surrender, both were. It appears therefrom that both tugs were engaged in a common venture, that both were exerting a strain upon the hawser when it parted, and that the

Hercules, as the leader of the tandem of tugs, must necessarily have participated in the selection of the route and the direction of the movements of the tugs and tow. For instance, it is alleged that "the tugs proceeded with the raft," that "the tugs were unable to make headway," and that "despite the efforts of the tugs" the raft was turned and swept broadside, etc.

The appellant relies upon the decision of the Circuit Court of Appeals for the Second Circuit in The W. G. Mason, 142 Fed. 913, 74 C. C. A. 83. That was a proceeding in rem against two tugs, the Mason and the Babcock, belonging to the same owner, and which had been engaged in towing a steamship under a contract made with the owners. The Mason did the towing, and her master directed the movements of the ship. The evidence, as found by the court, was that, while both tugs were cooperating in the same joint undertaking, each was acting independently of the other in doing a distinct part of the work; the office of the Mason being to tow and to signal to the steamship, and the office of the Babcock being to operate the stern line of the steamship, so as to turn her course when required. The Mason was exonerated, for the reason that she had nothing whatever to do with the signaling to the tow.

But the same court, in The Anthracite, 168 Fed. 693, 94 C. C. A. 179, in a proceeding in rem, held that where two tugs acted jointly in towing a barge, which was brought in contact with a rock by negligent steering, both tugs were responsible, although one of them was acting only as a helper, and the master thereof submitted himself entirely to the commands of the master of the other tug. The decision in that case is in point in the case at bar, as is also Thompson Towing & Wrecking Ass'n v. McGregor, 207 Fed. 209, 124 C. C. A. 479.

The question involved in this case has also been decided by this court adversely to the appellant's contention in The Columbia, 73 Fed. 237, 19 C. C. A. 436. In that case it was held that where the owner of a barge, which had no motive power, had undertaken to transport freight upon the barge, such barge and a tug, belonging to the same owner, by which the motive power was supplied, became one vessel for the purposes of the voyage, and that, without surrendering both, the owner was not entitled to limit his liability for damages caused by the negligence of the crew of either the barge or the tug. In so holding this court followed The Bordentown (D. C.) 40 Fed. 683, a leading case, in which Judge Brown held a tug liable which was under the control of another tug, where both belonged to the same owner, and in the opinion said:

"Where all the tugs employed belong to the same owner, and are under one common direction, and are engaged in the service at the time when the fault is committed, they are in the same situation * * * as a single vessel, as respects responsibility for the negligence of the common head. The words 'such vessel,' in section 4283, embrace all such tugs."

[2] The question remains whether in a case where, as here, there is but a single claim, and the value of the tugs largely exceeds the amount of the claim, the proceeding should be dismissed, in a case

where an action had already been brought in a state court to recover judgment for the claim. The object of the acts of Congress for limitation of liability apply only to cases where liability may be limited. Except for that particular purpose it clearly was not the intention of Congress to oust the jurisdiction of other courts. In The Defender (D. C.) 201 Fed. 189, 191, the court said:

"The proceeding is intended for the purpose of limiting liability, and this presupposes that the liability to be limited might exceed the limit; that is, that there might be personal liability beyond that of the res involved."

The appellant argues that it is not necessarily true that there will be but one claim against the fund. But upon its own statement of the facts as alleged in the petition it is inconceivable that any claim other than that of the owner of the raft can possibly arise. So far as the petition advises us, there was no personal injury to any one engaged in the venture, and no property was involved therein, other than the tugs and the raft. It was for the petitioner to set forth facts showing the peculiar and exclusive jurisdiction of the court of admiralty. This it has failed to do.

The decree is affirmed.