## THE KATHERINE.

(District Court, E. D. Louisiana, New Orleans Division. May 7, 1926.)

### No. 18218.

Maritime liens ⬤⟹37—Radio held part of ship's machinery tackle, apparel, and furniture as affecting conflicting claims of libelant and mortgagee.

Radio apparatus installed on ship, though subject to chattel mortgage, *held* part of the ship's machinery, tackle, apparel, and furniture, and, on seizure of ship in libel, predicated on bottomry bonds and other maritime liens, mortgagee was not entitled to have such liens subordinated to its mortgage.

In Admiralty. Libel by Godchaux Sugars, Incorporated, against the auxiliary schooner Katherine. On rule to show cause why certain maritime liens should not be subordinated to common-law mortgage of the Pacific Commercial Company. Rule discharged.

Milling, Godchaux, Saal & Milling and Terriberry, Rice & Young, all of New Orleans, La., for libelants and certain interveners.

Monroe & Lemann and Nicholas Callan, all of New Orleans, for respondents.

Bond, Curtis & Hall, of New Orleans, La., for interveners Associated Branch Pilots.

BURNS, District Judge. The Pacific Commercial Company seeks, by a rule to show cause, to have certain maritime liens subordinated to its common-law mortgage, which secures a note for 2,400 pesos (approximately $1,100), dated Manila, Philippine Islands, April 14, 1925, by which the Malaysian Navigation Company, as owners and operators of the schooner Katherine, hypothecated two certain wireless outfits, one of which was installed aboard the said schooner Katherine, and one aboard a vessel named Nunuana, belonging to that company.

As holder and owner of said note so secured plaintiff in rule had previously filed a petition in the civil district court for the parish of Orleans, state of Louisiana, praying for a sequestration of the wireless equipment on the schooner Katherine, which was then in the port of New Orleans, and for a foreclosure with recognition of its mortgage up to the amount of its principle, interest, attorneys' fees, and costs.

The writ of sequestration, issued out of the said court, was in the hands of the civil sheriff for the parish of Orleans. Before the sheriff could complete his sequestration by the removal of the wireless apparatus and reduce it to custody, the United States marshal, pursuant to an order of this court, on the libel of Godchaux Sugars, Incorporated, seized and took into his possession the said schooner, together with her engines, tackle, apparel, machinery, and furniture.

In due course the vessel was ordered sold under order of this court. The wireless apparatus was sold separately from the vessel pursuant to a stipulation by the libelant and the mover in rule, each of whom reserved their rights, without prejudice, against the proceeds.

The proceeds of sale amounted to $6,000 for the vessel, and $325 for the wireless equipment, or a total wholly inadequate to

pay the claims of libelants, which are based upon bottomry bonds, given for funds advanced for repairs, wages, and other necessaries for the ship, which total almost $25,-000.

The diligent and timely execution of process by the marshal of this court, who seized and took possession of the vessel intact, before the civil sheriff for the parish of Orleans had effectually executed the writ of sequestration issued out of the state court, precludes the necessity for a consideration of the delicate question which might have arisen from a conflict of seizures. Unquestionably the jurisdiction of this court was first to attach.

The rule, therefore, presents the single question: Does the wireless equipment in this case form part of the machinery, tackle, apparel, and furniture of the ship?

Judge Foster's decision in the Steamship Augusta Cases, 15 F.(2d) 727 (No. 16028 and No. 16066 of the docket), is highly persuasive here. There the Radio Corporation had merely leased the wireless apparatus to the ship, which was surrendered in a proceeding for liability following a collision, and the conclusion was that the apparatus was part of the necessary equipment of the ship:

"A ship is considered as consisting of the hull and engines, tackle, apparel and furniture of all kinds. Benedict's Admiralty, par. 157. This, of course, is elemental and requires no citation of authority. It is contended on behalf of the Radio Corporation that the wireless is not a necessary part of the equipment of a vessel, or at least was not such a necessary part of the Augusta, as there is no law of the United States requiring its installation.

"It seems to me that the wireless being on the ship formed part of her equipment regardless of who the actual owner might be. In these days wireless telegraph apparatus is part of the usual equipment of all steamers of any considerable size. If it was not considered necessary it would not have been on the Augusta. It is easy to imagine other patented articles ordinarily forming a part of the equipment of a vessel that might be used under license. Patented anchors are now used, entirely different in appearance to the familiar emblem of hope, patented steering gear is used on vessels and patented logs for registering the speed. It may be that patented engines will also be used on some ships. If the owners of any patented article so desired, they could be rented on a license agreement just as well as wireless apparatus."

These considerations seem to more conclusively justify an affirmative answer in the in-

stant case, where the apparatus was installed on the ship as equipment, subject only to a chattel mortgage, the effect of which can extend no further than to entitle the holder to proper rank with other holders of maritime liens. In the instant case the libel is predicated upon bottomry bonds and other such maritime liens.

Accordingly, the rule to segregate and turn over the proceeds of sale of the wireless apparatus to the civil sheriff of the parish of Orleans will be discharged.