**THE ALVAH H. BOUSHELL. THE C. H. HIX. THE CHAMPLAIN. THE CHARLESTON. WOOD TOWING CORPORATION v. SOUTHERN TRANSP. CO. et al.**

No. 2868.

Circuit Court of Appeals, Fourth Circuit.

Jan. 14, 1930.

John W. Oast, Jr., of Norfolk, Va., for appellant.

Francis S. Laws, of Philadelphia, Pa. (Lewis, Adler & Laws, of Philadelphia, Pa., on the brief), for appellee F. S. Royster Guano Co.

Edward R. Baird, Jr., of Norfolk, Va. (Baird, White & Lanning and George M. Lanning, all of Norfolk, Va., on the brief), for appellee Southern Transp. Co.

Henry H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellee Svendsen.

Before WADDILL and NORTHCOTT, Circuit Judges, and McDOWELL, District Judge.

WADDILL, Circuit Judge.

This is an appeal from a decree of the District Court of the United States for the Eastern District of Virginia, at Norfolk, giving judgments against appellant and its sureties aggregating $28,645.76, in libel proceedings instituted in that court against certain vessels of appellant.

The facts are: On Sept. 2, 1927, a collision occurred in the Southern branch of the Elizabeth river about noon, between the Norwegian steamship Henrik Ibsen and the barges Champlain and Charleston, as the steamship, proceeding north through the opening of the Norfolk & Portsmouth Belt Line Railroad Company bridge, emerged from said opening and with her bow struck the two barges as they were being towed south by the tug Belhaven. At the time of the collision, the steamship was in tow of the Wood Towing Company's tugs, Alvah H. Boushell and C. H. Hix, and the entire flotilla was under the command of the master of the tug Boushell, so placed by the owner of the towing company. The tug Alvah H. Boushell, by her master's orders, had cast off her lines, and was falling astern of the steamship when the accident occurred, and the tug C. H. Hix was moored to the starboard bow of the steamship at the time, and its master received and executed such orders as were given him by the master of the tug Alvah H. Boushell. The steamship and barges each received substantial damages. The tugs were of the usual harbor type, and the steamship was the usual type of tramp steamer, 383.9 feet long.

On the day of the collision, September 2, 1927, the Southern Transportation Company, as owner of the barges, libeled the steamtug Belhaven, the steamship Henrik Ibsen, and the tugs Alvah H. Boushell and C. H. Hix,

and filed its amended libel against said vessels and the Wood Towing Corporation on October 28, 1927. On September 6, 1927, the Wood Towing Corporation filed its petition for a limitation of liability as owner of the steam tug Alvah H. Boushell, in a separate cause, and the court ordered the tug C. H. Hix to be also brought into such proceeding. On September 7, 1927, Johann F. Svendsen, master of the steamship Henrik Ibsen, libeled the steam tug Belhaven in still a third cause, docketed separately. Answers were duly filed, and the three causes heard together, with the stipulation that all of the evidence taken at the hearing be read and considered in all of the proceedings. In the final decree, the three causes were consolidated.

The District Court decided that the collision was caused by negligence of those in charge of the tug Belhaven on the one hand, and of the tug Alvah H. Boushell and her master, as navigator of the steamship, Henrik Ibsen, and the tug C. H. Hix, on the other hand; that the Wood Towing Corporation was entitled to limit its liability to the value of its tugs Alvah H. Boushell and C. H. Hix; and exonerated the steamship Henrik Ibsen and the barges Champlain and Charleston from any fault. Interlocutory decree, page 438 of record. The final decree gave judgment against the Wood Towing Corporation and its sureties on the bonds executed and filed in the limitation of liability proceedings, which bonds were as follows: Tug C. H. Hix, $19,900; Tug Alvah H. Boushell, $9,096.76; and provided that the judgments on both bonds should bear interest from Sept. 2, 1927. The judgments aggregate the principal sum of $28,645.76, and provide that the Wood Towing Corporation shall, upon the payment thereof, receive the fund of $3,000 arising out of the sale of the tug Belhaven now in the registry of the court.

The Wood Towing Corporation appealed, assigning error to the trial court's ruling that the tugs Alvah H. Boushell and C. H. Hix were equally culpable one with the other, "one affirmatively, the other by reason of not being available, and that under the circumstances there should be no claim for limitation of liability except in the surrender of both vessels"; to the court's ruling that the Wood Towing Corporation should be denied limitation of liability save upon the surrender of the tug C. H. Hix as well as the tug Alvah H. Boushell; and to the court's failing to hold that the tug C. H. Hix in every way carried out all of the instructions of the master of the tug Alvah H. Boushell, and was in no way at fault.

The assignments of error relate to (a) the question of the liability of the tug C. H. Hix for fault in bringing about the collision; (b) the action of the court in holding the two tugs Boushell and Hix equally liable for the collision, under the facts and circumstances of the case; and (c) the court's action in denying to the Wood Towing Corporation, the owner of the tug, C. H. Hix, limitation of liability to the amount of the value of said tug.

The appellant's contention presents for the consideration of this court the question, whether the owner of two tugs, engaged in a joint enterprise, can be required to surrender both tugs in its proceeding for limitation of liability for damages caused by the fault of only one tug. In other words, the appellant says that the Hix was entirely free from fault in bringing about the collision, that it took no part in the direction, control, or management of the tow, but that, as respects the happenings incident to the collision, it was a mere dormant factor in the situation, did no act whatever to make it liable for losses resulting therefrom, and that the undertaking was wholly under the control, management, and direction of the master of the tug Boushell, and that the Hix cannot be held liable for damages resulting from such undertaking, in a proceeding in rem.

An examination of the authorities involving the question of liability for the direction and control of ships in cases having general relation to the one under consideration, and when, and when not, the right to limitation of liability should be allowed in connection with occurrences of that nature, discloses that the cases are many in number, and exceedingly interesting, but the turning point in all of them is, what are the real facts controlling in them. This case affords a striking illustration of how absolutely essential it is to determine the true facts of the case in order to apply the law correctly. The owners of the Hix, who denied its liability in the circumstances, and challenged the right to bring that vessel into the limitation of liability proceedings, agree, in the main, with their adversaries, as to what the law governing such cases is, but they urge that the ground on which the alleged liability exists has no substantial support under the facts of this case; appellees insist, however, that so far from the Hix being an innocent and dormant participant in the transaction, as contended for by appellant, the very contrary is true, and that the court has in effect held the Hix liable for acts of omission and commission in bringing about the collision, particularly as

it was, at the time of the occurrences that actually brought about the collision, the only tug of the towing company in a position to act, and it failed to act.

The conclusion of the opinion [1] of the trial judge is as follows: "That leaves me only the question of limitation of liability. I think under the circumstances that both of the tugs should have been engaged in actually handling the ship in the proper, safe and reasonable navigation of the river. At that time with the danger of meeting approaching vessels, proper caution required both tugs to have been alongside and both should have been ready to render service at the time when danger became imminent, and that if both had been there the possibility of damage might have been very materially reduced, and I also think that under these circumstances both tugs were engaged in a joint adventure and that one was equally culpable with the other, one affirmatively, the other by reason of not being available, and that under the circumstances there should be no claim for limitation of liability except in the surrender of both vessels."

It will be borne in mind that at the time of, and shortly before, the collision, the master of the Boushell, who was in charge of the flotilla, and who was directing the navigation from the bridge of the steamship, had cast off the lines of the tug Boushell from the steamship, thereby preventing the aid of that tug in the navigation of the tow, and that the Hix, made fast to the starboard bow of the ship, was in point of fact alone in a position to render aid, as required. Considering the many cases involving questions somewhat similar to the one under consideration, which include the general handling of tugs and tows, and the great contrariety of decisions growing out of such situations, we can but feel that the differences have arisen rather upon divergent views of the facts than of the law, and that, upon careful consideration, serious differences will not be found to exist in the law applicable. In this case, the towing company contracted to tow a ship to a given destination, necessitating the use of two of its tugs. The ship was taken over and placed in the control of the tugs, under the specific direction of the master of one of the tugs. That master took command of the ship and tugs, and was proceeding en route in charge of the flotilla, directing the same from the ship's bridge, as is customary, and while so engaged, pursuant to the towage undertaking, a collision occurred, as a result of the

fault in navigation of the tow thus in charge of the master of one of the tugs, so placed in command by the towing company. Under such circumstances, both tugs are responsible and liable for damages arising from such collision, certainly where, as found here by the trial court, and as to which there seems to be no very serious controversy, both were participants in the venture and undertaking, and both were at fault in bringing about the collision. The master of the Boushell, so in control of the undertaking, was, in such circumstances, to all intents and purposes, the master of both vessels, and the two tugs constituted the unit to be surrendered to justify a limitation of liability.

Considering the facts in this case, in the light of the authorities, where both vessels had a common ownership, acted under the direction of a common master, and both participated in the towage service, there is no serious question, in our judgment, as to the existence of liability on the part of both vessels thus engaged. The Arturo (D. C.) 6 F. 308, 312; The Bordentown (D. C.) 40 F. 682, 683; The Columbia (C. C. A.) 73 F. 226, 238, 239; The Anthracite (C. C. A.) 168 F. 693; Thompson, etc., Co. v. McGregor (C. C. A. 6th Circuit) 207 F. 209; Shipowners' & Merchants' T. Co. v. Hammond Lumber Co. (C. C. A. 9th Circuit) 218 F. 161; The Transfer No. 21 (C. C. A. 2nd Circuit) 248 F. 459, 461.

The Arturo (D. C.) 6 F. 308, supra, was a case in which two tugs, belonging to different owners, while performing a towage service, stranded the tow upon a shoal, both tugs being under the command of the master of one of the tugs. Each of the tugs was held liable because both were in fault in bringing about the stranding. Judge Lowell, United States Circuit Judge of the District of Massachusetts, in his opinion, stated that, if one tug was wholly in fault, she alone would be responsible, saying, however, "But for their joint action, so far as it conduced to the loss, I hold them to be jointly responsible."

In The Bordentown (D. C.) 40 F. 682, supra, Judge Addison Brown, of the Southern district of New York, held both the Bordentown and the Winnie, engaged in a towage service, liable for the fault of the master of the Bordentown. The tugs were owned by the same owner, and the master of the Bordentown was in command of both tugs. Judge Brown, speaking for the court, said; at page 687 of 40 F.: " * * * At the time when the master's fault arose, the Winnie was as much a part of the moving power

[1] Oral opinion.

as the Bordentown, and was equally under the same direction. She belonged to the same owners; and from the beginning to the end she was engaged, in the owner's behalf, in the work of towing the other boats, precisely as the Bordentown was engaged. It was immaterial on board which tug the master, for the time being, was, or from which boat his orders were given. Both as related to the owners of the tugs and as related to the owners of the boats in tow, the Bordentown and the Winnie, in taking the tow through to Kills, were in effect one vessel."

The Columbia (C. C. A.) 73 F. 226, supra, held that, where the owner of the barge which has no motive power, had undertaken to transport freight upon the barge, such barge and a tug, belonging to the same owner, by which the motive power was supplied, became one vessel for the purposes of the voyage, and that the owner was not entitled to limit his liability, under the statutes, for damages caused by the negligence of the crew of either craft, without surrendering both.

In The Anthracite (C. C. A.) 168 F. 693, supra, two tugs were acting jointly in towing a barge, which was brought in contact with a rock by negligent steering. The tugs were both held responsible, though one of them acted only as a helper, the master having submitted her entirely to the commands of the master of the other tug.

Thompson Towing, etc., Ass'n v. McGregor, 207 F. 209 (C. C. A. 6th Circuit), supra, was a case in which the tug Merrick and the lighter Stewart were jointly engaged in floating the Elwood. The Merrick could not move the Elwood, and a part of the latter's cargo had to be removed. The most effective way was for the Merrick to continue its efforts to move the Elwood, while the Stewart placed the cargo on another vessel. The two boats, thus connected through the Elwood, were jointly engaged in floating that vessel, one by continuing to pull on its tow line with a view of removing her from the danger of her position, and the other by continuing to place the cargo on another vessel temporarily, thus bending their joint efforts toward saving the vessel. In such circumstances, the Merrick and the Stewart constituted a single unit, to be surrendered in order to justify the limitation of liability.

It was held in Shipowners', etc., v. Hammond Lumber Co., 218 F. 161 (C. C. A. 9th Circuit), supra, the opinion by Judge Gilbert, Senior Circuit Judge, that where two tugs belonging to the same owner co-operate one with the other in the towing of a raft of logs, which was lost, the hauser of one being made fast to the forward bitts of the other, and was attached directly to the raft, and towing in tandem, that, if either tug was liable for the loss of the tow, both were liable, and both had to be surrendered in a proceeding by the owner for the limitation of liability.

Full consideration has been given to the able and interesting brief filed by counsel for the appellant, as well as to the authorities cited therein, and as to many of which we have already given consideration in endeavoring to show their inapplicability, under their peculiar facts, and as not controlling in this case. The appellant relies especially upon the able and interesting decision of Mr. Justice Holmes, of the Supreme Court of the United States, in the case of Liverpool, etc., Navigation Co. v. Brooklyn, etc., Terminal, 251 U. S. 48, 54, 40 S. Ct. 66, 64 L. Ed. 130, supra. This case is a comparatively recent decision of the Supreme Court, and, with the authorities cited therein, throws considerable light upon, and settles, the difficult questions considered by it; but to what extent it is controlling here is a very different question. Mr. Justice Holmes, delivering the court's opinion, said: "This is a libel in admiralty brought by the petitioner against the respondent for a collision with the petitioner's steamship Vauban while it was moored at a pier in Brooklyn. The respondent does not deny liability but claims the right to limit it under Rev. Stat. * * * to the value of the vessel that caused the damage. The moving cause was the respondent's steam tug Intrepid which was proceeding up the East River, with a car float loaded with railroad cars lashed to its port side and on its starboard side a disabled tug, both belonging to the respondent. By a stipulation * * * it was agreed that the damage sustained was $28,036.98 with $5,539.84 interest. The value of the tug Intrepid was found to be $5,750, and the liability of the respondent was limited by the District Court to that sum with interest."

The Circuit Court of Appeals (250 F. 1021) affirmed the decree of the trial court, and the case was appealed to the Supreme Court on the question of whether the value of the whole flotilla should not have been included in the decree. The Supreme Court affirmed the decision of the Circuit Court of Appeals.

How entirely dissimilar the facts of that case are to the facts we are dealing with here, is apparent at a glance. To seek to hold

984

liable the car float lashed to the port side of the Intrepid, en route on a towage undertaking, for a collision caused by its being run by the tug into the steamship Vauban, while moored at a pier in Brooklyn, is unthinkable, and would result in making a vessel in tow of a tug in effect a guarantor of the tug's conduct instead of imposing upon the latter the duty required of it by law to exercise the proper precaution for the protection of shipping placed under its control, and to safely conduct the same to its destination. The car float in that case, while thrown into collision with the Vauban by the negligence of the tug, was under the control and direction of the tug, and it was a mere dormant and passive instrument in no manner responsible for its safe conduct. None of the elements fixing liability of the appellant under the contract of towage of the steamship in the present case have any relation to the reasoning adopted in the case decided by Justice Holmes.

Appellant also relies especially upon The Begona II (D. C.) 259 F. 919, a decision of Judge Rose, of the District of Maryland, which bears only incidentally on the issues in this case under its facts. That case grew out of a collision between a tow of the Atlantic Transport Company, which, while crossing the harbor at Baltimore, collided with the anchor chain of the Spanish steamer Begona II, as that vessel was in the act of raising its anchor preparatory to starting on its voyage to sea. The District Court held both steamship and tow at fault, in that neither of them exercised the degree of maritime skill reasonably required of them to observe the movements of the other, with the result that, while the tug passed safely over the anchor chain then being raised, the same was fouled by the barge, which threw the barge into collision with the steamship. The Mary P. Riehl (D. C.) 241 F. 285, and Id. (D. C.) 259 F. 919. The last-named decision involved the question of whether or not the tug Mary P. Riehl and car float should both be brought into the limitation of liability proceedings, or the tug only. Judge Rose, with apparent hesitancy, relieved the car float from responsibility, and placed blame for the collision, as between the tug and float, solely on the tug, upon the theory that the car float had no control over its movements, and the tug alone supplied its motive power. The principle upon which liability was determined was substantially the same as in Liverpool, etc., Navigation Co. v. Brooklyn, etc., Terminal, 251 U. S. 48, 40 S. Ct. 66, 64 L. Ed. 130, supra. The Begona II, supra, has no practical bearing here, where

the tug seeking to be relieved from liability was, so far from being a lifeless, dormant thing, a live and active factor at the time of the collision, then engaged in the management of the tow.

The decree of the District Court will be affirmed, with costs to the appellees.

Affirmed.