**MOORE v. MARTIN MARINE TRANSP. CO. (THURSTON–HOLLAND CO., Inc., et al., Intervenors).**

No. 5966.

United States Court of Appeals Fourth Circuit.

Argued Oct. 13, 1949.

Decided Nov. 3, 1949.

———◇———

Roy L. Sykes and R. Arthur Jett, Norfolk, Va., for appellant.

Leon T. Seawell, Norfolk, Va., for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

On May 27, 1948, a libel in rem was filed in the United States District Court for the Eastern District of Virginia, Norfolk Division, against the steam tug P. F. Martin, its tackle, apparel, furniture, etc., by the Mexican Petroleum Corporation, as Admiralty Action No. 7217. No mention was made in this proceeding of the bunker fuel oil then laden in the tanks of the tug.

An Order of Sale was entered in Admiralty Action No. 7217 and pursuant thereto the tug P. F. Martin, her engine, boilers, tackle, apparel, furniture, etc., were advertised for sale and were sold on October 15, 1948, subject to confirmation by the Court. There was no express provision in this order or advertisement as to the bunker fuel oil.

The sale of the tug P. F. Martin, her engines, boilers, tackle, apparel, furniture, etc., was confirmed by the Court on October 21, 1948, and the United States Marshal for the Eastern District of Virginia did on October 22, 1948, execute and deliver to the purchaser, L. Chenman, Incorporated, appellee, a bill of sale for said vessel, its tackle, apparel, furniture, etc.

The instant proceeding before us was a petition for attachment filed October 21, 1948, by Philip Moore, master of the steam tug P. F. Martin, for wages due him as such master, and sought to subject to this attachment the 705 barrels, more or less, of bunker fuel oil laden in the tanks of the tug. The District Court awarded Moore a personal judgment for the wages due him but dismissed the attachment of the fuel oil on the ground that title to this oil passed to the purchaser of the tug under the sale, mentioned above, decreed in the libel of the Mexican Petroleum Corporation, in Admiralty Action No. 7217. Moore, master of the tug, has appealed to us.

The only question before us, therefore, is whether the fuel oil laden in the tanks of the tug P. F. Martin at the time she was sold by the United States Marshal was a part of the vessel, her engines, boiler, tackle, apparel, furniture, etc., so as to pass title to this oil to the purchaser at the sale decreed in Admiralty Action No. 7217, in priority to the attachment of this oil by the appellant Moore. We think the District Court properly decided this question in the affirmative.

Appellant relies on S. S. Hope and Panther Co. v. Trustees, Baine Johnson and Company, Newfoundland Reports, 1884–1896, p. 881, wherein coal was held not to be a part of the ship and not covered by the term "tackle, appurtenances, etc." But the court there pointed out that the coal in question was not on the ship when the mortgage was executed. Swift v. Brownell, 23 Fed.Cas. page 554, No. 13,695, is cited holding that fishing stores aboard a whaler were not included in the phrase "the ship and her freight then pending" in a limitation of liability proceeding. In Roddick v. Indemnity Mutual Marine Insurance Co. (C.A.1895), 2 Q.B. 380, Lord Esher, M.R. (at page 383), said: "There is, as it seems to me, clear authority for holding that the word 'ship' (in a marine insurance policy) does not include the provisions which are taken on board." See, also, Hoskins v. Pickersgill, (1783) 3 Dougl. 222, 1 Marshall, Ins. 241, 1 Park, Ins. 126; The Dundee, (1823) 1 Hagg., Ad.R. 109, 123; Gale v. Laurie, (1826) 5 B. & Cr. 156, 164.

The case chiefly relied on by appellant is Chesapeake Stevedoring Company v. The Dalana,[1] an unreported decision rendered in 1923 in the Eastern District of Virginia holding that stores of a vessel which are consumed in the use are not subject to liens in rem as are machinery, tackle and other permanent equipment; but we are not impressed by the distinction there made. We

1. No opinion for publication.

think rather that consumable stores as well as permanent equipment should be held subject to liens in rem against the vessel on the same principle that they are held to be covered by insurance on the vessel or ordinarily to pass with the vessel when she is sold. As said by Judge Rose in Atlantic, Gulf, & Pacific S. S. Corp. v. United States (The Liberator), D.C., 287 F. 714, 715–716: "For insurance purposes in the British Marine Insurance Act rule 15, schedule 1, the word 'ship' is now declared to cover all materials and outfit, stores and provisions, officers and crew, and, in case of vessels engaged in special trade, the ordinary fittings aboard, and also, in the case of a steamship, the machinery, boilers, engines and stores. St. 6 Edward VII, c. 41. This is but a codification of what has long been held to be the law. 1 Parsons on Marine Insurance; 1 Arnould, Marine Insurance (8th Ed.) §§ 219, 220. In view of all this, it may be that the conveyance of a ship would carry with it consumable stores on board it, if nothing appeared to show that the parties purposed otherwise. It would usually be in practice the more convenient rule, as was pointed out by Lord Tenterden, then Chief Justice Abbott, in Gale v. Laurie, supra; whereas, 'if it should be held that nothing is to be considered a part of the ship that is not necessary for her navigation or motion on the water, that will introduce many nice questions, and much discussion would most likely be created.' "

It has been generally held that within the conventional phrase "the ship, her engines, boilers, tackle, apparel, furniture, etc." fall all material, apparatus and appurtenances of a ship that are closely related to her navigation and essential to her operation as a ship. To deprive an oil-burning vessel of her fuel oil is to deprive the ship of any means of motion and to negative the very purposes for which a ship is built and launched. We think, therefore, that dictates of common sense require us to uphold the District Court's decision that the fuel oil in the bunkers of the tug P. F. Martin passed to the purchaser under the sale of the tug in pursuance of the libel in rem. And we believe this doctrine is supported by the authorities.

In the Augusta, D.C., 15 F.2d 727, it was held that wireless apparatus forms a part of the ship's equipment and not something separate and apart from the ship itself. In Turner v. United States (Aeolus-Zero), 1926 A.M.C. 261, 262, affirmed 2 Cir., 27 F.2d 134, Judge Hand said: "Aside from this consideration, however, the refrigerating plant was a necessary appurtenance for a ship engaged in carrying frozen meat, was substantially built into the ship, and though removable under the terms of the charter party was in law a part of the ship while remaining on it. Consequently this plant must share in the liability of the vessel."

And in the Great Canton, 1924 A.M.C. 1074, Judge Hand held a chronometer to be a part of the ship, which passed to the purchaser of the ship, though, at the time of the sale, the chronometer was ashore in a repair shop. See, also, the Manila Prize Cases, 188 U.S. 254, 23 S.Ct. 415, 47 L.Ed. 463; the opinion of Judge Rose in the Liberator, supra; the Katherine, D.C., 15 F.2d 387, 1926 A.M.C. 878; the Hirondelle, D.C., 21 F.Supp. 223, 1937 A.M.C. 1597. And see I Parsons on Marine Insurance, 524, 525; 1 Benedict on Admiralty, 119.

We uphold the Conclusions of Law handed down by the District Court:

"1. The bunker fuel oil laden aboard the Steam Tug P. F. Martin at the time she was sold by the United States Marshal for the Eastern District of Virginia constituted a part of said vessel, its tackle, apparel, furniture, etc.

"2. The purchaser of said vessel at the Marshal's sale above mentioned acquired title and possession of said bunker fuel oil by virtue of the Bill of Sale given to him by the United States Marshal for the Eastern District of Virginia."

The decree of that court is, accordingly, affirmed.

Affirmed.