**OCEANIC FISHERIES, Inc. v. THE JOHN MICHAEL et al.**

No. 15545.

United States District Court
W. D. Washington, N. D.

April 9, 1951.

Summers, Bucey & Howard, Seattle, Wash., for libelant, Oceanic Fisheries Co., Inc.

Bogle, Bogle & Gates, Seattle, Wash., for respondent The John Michael.

Bogle, Bogle & Gates, Seattle, Wash., for claimant, Butterworth System, Inc.

HALL, District Judge.

The ultimate question for decision is whether or not the two tank cleaners were a part of the tackle, apparel, furniture and equipment, of the Tug, "John Michael", on November 26, 1950 when the barge "Arctic Chief" being towed by the tug went adrift with her cargo of fish oil and sank enroute from Kodiak Island to Seattle.

The first problem is whether or not the tug and barge were operated as a unit. Claimant concedes that such may be the result only in collision cases; but from the cases cited and others examined, the question never turned on whether or not there was a collision but whether or not the two were operated as a unit.

It is true that Sacramento Navigation Co. v. Salz, 1927, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663, was a collision case. The court there held the combination of steamer and barge in tow was "one vessel" under the Harter Act. 46 U.S.C.A. § 192.

The question of collision was not discussed. In reason, it could not have made any difference because the claim, as here, was being made for the loss of the cargo of the barge against the owners of the barge and its towing steamer.

The Court in that case approved the doctrine announced by the C.C.A. of this circuit in 1896, in The Columbia, 73 F. 226, certiorari denied Oregon Railroad & Nav. Co. v. Balfour, 176 U.S. 685, 20 S.Ct. 1027, 44 L.Ed. 639, where a cargo of a barge in tow was lost, but the barge was not, and a limitation of liability proceeding by the barge only was commenced. Judge Ross in a lengthy opinion held that the barge and tug were one "vessel" under R.S. 4283, 46 U.S.C.A. 183, and said, 73 F. at page 237, "When the tug made fast and took in tow the barge, to perform the contract of carriage, the two became one vessel for the purpose of that voyage,—as much so *as if she had been taken bodily on board* the tug, instead of being made fast thereto by means of lines." (Emphasis added.)

In Standard Dredging Co. v. Kristiansen, 2 Cir., 1933, 67 F.2d 548, certiorari denied 290 U.S. 704, 54 S.Ct. 372, 78 L.Ed. 605, the court held that a dredge and its attending barge were one "vessel" under the Jones Act, 46 U.S.C.A. § 688. In The Arturo, C.C.D., Mass., 1881, 6 F. 308, two tugs, belonging to different owners, shoaled a vessel, and the court held they were a unit, or one vessel, and both liable. In The Bordertown, D.C.S.D.N.Y.,1889, 40 F. 682, the tugs Bordertown and Winnie having a number of canal boats in tow lost them in a storm. They were in one ownership engaged in a joint operation and were held to be one vessel. In Ship-owners, etc. v. Hammond Lumber Co., 9 Cir., 1914, 218 F. 161, certiorari denied, 238 U.S. 633, 35 S.Ct. 938, 59 L.Ed. 1498, a raft of logs was in tow by two tugs and was lost after sticking on a bar. Both were held liable as a unit. In The Anthracite, D.C.S.D.N.Y., 1908, 162 F. 384, affirmed 168 F. 693, certiorari denied 214 U.S. 522, 29 S.Ct. 702, 53 L.Ed. 1067, a barge in tow by two tugs was damaged by being grounded on a rock and the two tugs were held liable as a unit.

In none of the foregoing cases, except Sacramento Navigation Co. v. Salz was there a collision involved. In each of them the test was whether or not they were operated as a unit on the particular voyage.

 Under the facts in this case and the above authorities it is clear that the Tug "John Michael" and barge "Arctic Chief" being in one ownership and operated under one contract to haul fish oil in the powerless barge, were operated as a unit and were one vessel for the purpose of the voyage upon which they were engaged at the time of the loss. Moreover it seems clear from the aforementioned cases that had the barge not been lost but only its cargo it would be subject to libel with the tug. Cf. The Columbia, supra.

Inasmuch as the tug and barge must be considered one vessel, the remaining question is whether or not the two tank cleaners were a part of the apparel and equipment of either, it being clear that the tank cleaners were in a different ownership than the tug and barge.

The tank cleaners while they were aboard the tug, were not used by the tug to clean its tanks or even powered by the tug when being used. They were obtained and used solely to clean fish oil out of the tanks of the barge at the end of its voyage in Seattle in order that the barge might be used for other cargo on other voyages.

 The test of whether or not the tanks are part of the vessel is whether or not they were necessary to the accomplishment of the particular voyage.

 While the barge could not have been used for other cargo until the fish oil was cleaned out of its tanks, it was not necessary to use the tank cleaners before loading the fish oil at the start of the voyage at Kodiak (petroleum having been hauled to Kodiak, the petroleum was cleaned out of the tanks without the use of the tank cleaners); and it was not necessary to use the tank cleaners to complete the voyage. It would have only been necessary to have cleaned the tanks of fish oil and used the tank cleaners, *if* some other cargo were to be thereafter carried on some other voyage. The tank cleaners under the evidence could just as well have been stored in Seattle to await the return of the barge. It might have been just as necessary to have the barges' bottom scraped and painted before another voyage, yet it could hardly be urged that a barge dry dock or scraping and painting equipment were necessary to a voyage hauling fish oil. The tank cleaners are not thus in the same relation to the purpose of the particular voyage as the diving bell in The Witch Queen, D.C.Cal., 1874, 30 Fed.Cas. No.17916; or the chronometer in The Frolic, D.C.R.I., 1906, 148 F. 921; or the Deck Winch in The Joseph Warner, D.C., Mass., 1939, 32 F.Supp. 532, 534; or the Refrigerating equipment, in Turner v. U. S., 2 Cir., 1928, 27 F.2d 134; or the Radio in The Katherine, D.C.E.D.La., 1926, 15 F.2d 387; and The Augusta, D.C.E.D.La., 1920, 15 F.2d 727; or the Engine and net lifter in The Hope, D.C.Mass., 1911, 191 F. 243. In each of those cases the test was the necessity of the equipment for the purpose of the particular use on that particular voyage of the vessel.

I therefor hold that the two tank cleaners are not subject to libel under the facts in this case and order them returned to the claimant Butterworth System, Inc. Each party shall pay its own costs.