LIVERPOOL, BRAZIL & RIVER PLATE STEAM NAVIGATION COMPANY *v.* BROOKLYN EASTERN DISTRICT TERMINAL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 81.   Argued November 14, 1919.—Decided December 8, 1919.

A steam tug, propelling, lashed to its sides, other vessels of the same owner, in pursuit of the owner's business, brought one of them—a float carrying the cargo—in collision with libelant's vessel. *Held*, that under Rev. Stats., §§ 4283–4285, the value of the tug, and not the value of the flotilla, was the limit of their owner's liability. P. 51.

250 Fed. Rep. 1021, affirmed.

THE case is stated in the opinion.

*Mr. Van Vechten Veeder*, with whom *Mr. Charles C. Burlingham* was on the brief, for petitioner:

The two tugs and the car float, physically united in the performance, through the servants of a common owner, of a common adventure, constitute in reality but a single instrumentality and must all be surrendered as a condition to the limitation of the owner's liability. *The Main* v. *Williams*, 152 U. S. 122, 131. It would seem to be too obvious for argument that the car float must be surrendered. Apart from the fact that she was the vessel which actually did the damage, she was the instrumentality by which the respondent undertook to perform the service for which it was paid. It surely can make no difference in principle, for the purposes of the limitation statute, whether cargo is carried in the hold of the same vessel which contains the motive power of transportation, or whether, as in this case, the motive power is in one vessel and the cargo is towed in another. In both cases the motive power and the hold are necessary instruments of the transportation. So the tug, which was without steam and was joined to the flotilla for the convenience of the respondent, was, like the car float, also instrumental in causing the collision, inasmuch as her presence as part of the floating unit increased to that extent the difficulty of navigating the flotilla, and added to that extent to its momentum in the negligent course which brought about the disaster. *Thompson Towing & Wrecking Assn.* v. *McGregor*, 207 Fed. Rep. 209; *The Columbia*, 73 Fed. Rep. 226; s. c., 90 Fed. Rep. 295; *The San Rafael*, 141 Fed. Rep. 270; *Shipowners' & Merchants' Tugboat Co.* v. *Hammond Lumber Co.*, 218 Fed. Rep. 161; *The Bordentown*, 40 Fed. Rep. 682, 687; *The Anthracite*, 162 Fed. Rep. 384, 388.

*The W. G. Mason*, 142 Fed. Rep. 913, has been a source of much confusion. It is undoubtedly true that the per-

sonal liability of the owner is not a determining factor as
to the liability of a vessel *in rem*. We also agree that the
fact that the two vessels are to be regarded as one for
the purposes of a joint undertaking of their owner may
have no bearing upon the question of their respective
liabilities *in rem*. But neither of these considerations has
any bearing upon the question of what must be surren-
dered by a respondent as a condition of limiting his liabil-
ity. There may be no liability whatever *in rem*, and yet
the shipowner may be entitled to limit his liability by
surrendering the vessel which was concerned in the dis-
aster.

The actual decision in *The W. G. Mason, supra*, was
simply that while the two tugs were engaged in towing
the steamship, they were acting in independent capacities.
This is made clear by a later decision of the same court
in *The Anthracite, supra*.

In *The Transfer No. 21*, 248 Fed. Rep. 459, the same
court considered for the first time a state of facts sub-
stantially similar to the case at bar, applying the prin-
ciple underlying the action *in rem* to a limitation proceed-
ing. The result is that in the Second Circuit the owner
of two or more vessels engaged for profit in a particular
adventure may limit his responsibility for the damage
done by them to the value of one. Although the liability
is said to be strictly as *in rem*, the result may be, as in
the case at bar, that the vessel which physically did the
damage is not required to respond either in itself or
through its owner; while another vessel, which was not
actually in collision at all, is held solely liable for the fault
of its navigator. Yet, according to the same court's
decision in *The Anthracite, supra*, it is sufficient that the
navigator of a vessel is actually directing her movements;
it is not necessary that he shall be technically master,
or, indeed, aboard. But the master of a tug which has
a car float, without motive power, lashed by it, is cer-

tainly the only person who has any control over its movements.

In *The Eugene F. Moran*, 212 U. S. 466, this court refused to extend the fiction of the personification of a vessel to the situation where a tow was being navigated by an independent contractor. Where, however, the two vessels, as tug and tow, belong to the same owner, the objection that an application of the fiction would result in the taking of a man's property for the wrong of another does not apply; and there is good reason for holding both his vessels liable for the damage occasioned by the wrongful manner in which he himself manages his own vessels where both are involved in the mismanagement.

Congress intended only to protect an owner from losing all his property in a single disaster. It limited his liability to the property engaged in the adventure in which the disaster occurred. It was clearly not the intention of Congress to single out a particular portion of the property engaged in an adventure and limit the owners' liability to such portion.

*Mr. Samuel Park*, with whom *Mr. Henry E. Mattison* was on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a libel in admiralty brought by the petitioner against the respondent for a collision with the petitioner's steamship Vauban while it was moored at a pier in Brooklyn. The respondent does not deny liability but claims the right to limit it under Rev. Stats., §§ 4283, 4284 and 4285, to the value of the vessel that caused the damage. The moving cause was the respondent's steam tug Intrepid which was proceeding up the East River, with a car float loaded with railroad cars lashed to its port side and on its starboard side a disabled tug, both belonging to the

respondent. By a stipulation dated August 3, 1917, it
was agreed that the damage sustained was $28,036.98
with $5,539.84 interest. The value of the tug Intrepid
was found to be $5,750, and the liability of the respondent
was limited by the District Court to that sum with inter-
est. The Circuit Court of Appeals affirmed the decree
without an opinion. 250 Fed. Rep. 1021; 162 C. C. A.
664. The case is brought here on the question whether
the value of the whole flotilla should not have been in-
cluded in the decree.

The car float was the vessel that came into contact with
the Vauban, but as it was a passive instrument in the
hands of the Intrepid that fact does not affect the ques-
tion of responsibility. *The James Gray* v. *The John Fraser*,
21 How. 184. *The J. P. Donaldson*, 167 U. S. 599, 603,
604. *The Eugene F. Moran*, 212 U. S. 466, 474, 475.
*Union Steamship Co.* v. *Owners of the "Aracan*," L. R. 6
P. C. 127. The rule is not changed by the ownership of
the vessels. *The John G. Stevens*, 170 U. S. 113, 123.
*The W. G. Mason*, 142 Fed. Rep. 913, 917. 212 U. S. 466,
475. L. R. 6 P. C. 127, 133. These cases show that for
the purposes of liability the passive instrument of the
harm does not become one with the actively responsible
vessel by being attached to it. If this were a proceeding
*in rem*, it may be assumed that the car float and disabled
tug would escape, and none the less that they were lashed
to the Intrepid and so were more helplessly under its
control than in the ordinary case of a tow.

It is said, however, that when you come to limiting
liability the foregoing authorities are not controlling—
that the object of the statute is "to limit the liability of
vessel owners to their interest in the *adventure*," *The Main*
v. *Williams*, 152 U. S. 122, 131, and that the same reason
that requires the surrender of boats and apparel requires
the surrender of the other instrumentalities by means of
which the tug was rendering the services for which it

was paid. It can make no difference, it is argued, whether the cargo is carried in the hold of the tug or is towed in another vessel. But that is the question, and it is not answered by putting it. The respondent answers the argument with the suggestion that if sound it applies a different rule in actions *in personam* from that which, as we have said, governs suits *in rem*. Without dwelling upon that, we are of opinion that the statute does not warrant the distinction for which the appellant contends.

The statute follows the lead of European countries, as stated in *The Main* v. *Williams*, 152 U. S. 122, 126, 127. Whatever may be the doubts as to the original grounds for limiting liability to the ship or with regard to the historic starting point for holding the ship responsible as a moving cause, *The Blackheath*, 195 U. S. 361, 366, 367, it seems a permissible conjecture that both principles, if not rooted in the same conscious thought, at least were influenced by the same semi-conscious attitude of mind. When the continental law came to be followed by Congress, no doubt, alongside of the desire to give our shipowners a chance to compete with those of Europe, there was in some sense an intent to limit liability to the venture, but such a statement gives little help in deciding where the line of limitation should be drawn. No one, we presume, would contend that other unattached vessels, belonging if you like to the same owner, and coöperating to the same result with the one in fault, would have to be surrendered. *Thompson Towing & Wrecking Assn.* v. *McGregor*, 207 Fed. Rep. 209, 212–214. *The Sunbeam*, 195 Fed. Rep. 468, 470. *The W. G. Mason*, 142 Fed. Rep. 913, 919. The notion as applicable to a collision case seems to us to be that if you surrender the offending vessel you are free, just as it was said by a judge in the time of Edward III, "If my dog kills your sheep and I freshly after the fact tender you the dog you are without recourse against me." Fitz. Abr., Barre, 290. The words of the

statute are "The liability of the owner of any vessel for any . . . injury by collision . . . shall in no case exceed the amount or value of the interest of such owner in such vessel." The literal meaning of the sentence is reinforced by the words "in no case." For clearly the liability would be made to exceed the interest of the owner "in such vessel" if you said frankly, In some cases we propose to count other vessels in although they are not "such vessel"; and it comes to the same thing when you profess a formal compliance with the words but reach the result by artificially construing "such vessel" to include other vessels if only they are tied to it. Earlier cases in the Second Circuit had disposed of the question there, and those in other circuits for the most part if not wholly are reconcilable with them. We are of opinion that the decision was right. *The Transfer No. 21,* 248 Fed. Rep. 459. *The W. G. Mason,* 142 Fed. Rep. 913. *The Erie Lighter 108,* 250 Fed. Rep. 490, 497, 498. *Van Eyken* v. *Erie R. Co.,* 117 Fed. Rep. 712, 717.

*Decree affirmed.*