In re DEFENSE PLANT CORPORATION.

THE BARGE DPC 9 INLAND et al.

THE BARGE DPC 24 INLAND et al.

No. 555.

District Court, W. D. Tennessee, W. D.
Jan. 17, 1945.

Burch, Minor & McKay, of Memphis, Tenn., and Lemle, Moreno & Lemle, of New Orleans, La. (Selim B. Lemle, of New Orleans, La., of counsel), for Defense Plant Corporation.

Fulbright, Crooker, Freeman & Bates and Carl G. Stearns, all of Houston, Tex., and Armstrong, McCadden, Allen, Braden & Goodman, of Memphis, Tenn., for claimant.

BOYD, District Judge.

Petitioner, Defense Plant Corporation, in this proceeding seeks exoneration from, or limitation of, liability as owner of DPC 9 Inland and DPC 24 Inland, which were involved in a collision with the fender system and bridge of Apalachicola Northern Railroad Company across the Apalachicola River (Gulf Intracoastal Waterway) in the State of Florida, on February 11, 1943. The barges, which were unmanned at the time, were being towed astern on a hawser in charge of the tug Mars and crew of the charterer, Butcher-Arthur Company, and were approaching claimant's bridge when suddenly the lead barge sheered and struck the fender system and bridge pier, causing damage. The Railroad Company, sole claimant, in opposing, alleged the barges to be unseaworthy and known to be such by the petitioner, and seeks to recover damages in the approximate sum of $400,000. It is alleged the value of the barges following the collision was approximately $90,000.

The principal question is whether the petitioner, Defense Plant Corporation, was negligent in its failure to equip with skegs its barges which were bare boat chartered by a reputable towing concern for operation on the Gulf Intracoastal Waterway. Or, to state it another way, were the barges unseaworthy by reason of not being equipped with skegs, and thus at fault for the collision? Another question might arise if the petitioner has not been negligent as aforementioned, and even if its barges are found to be seaworthy, and that is as to whether the barges, being passive instrumentalities, in tow of a tug could be responsible for the damage to claimant's fender system and bridge.

932

In a proceeding in a Texas court similar to this, a consent decree was entered by which the charterer herein, owner and operator of the tug Mars, paid $95,000, including interest, in settlement of all liability against it and the tug, growing out of this collision.

■ There would seem to be no serious question in the law suit as to petitioner's right to limit its liability, as clearly the collision occurred without its knowledge or privity. Nor does the Court experience any great difficulty in holding the petitioner entitled to complete exoneration.

■ The burden of proof on the question of exoneration rests upon the claimant to show that some fault of the barges or negligence of the petitioner caused the damage. Claimant acknowledged this by alleging affirmatively in its claim as a fault that the barges were unseaworthy. This burden remains upon claimant throughout the trial and never shifts.

As to whether skegs are necessary to make a barge seaworthy, the Court has had the benefit of the opinions of a number of qualified experts. Some agree that skegs on barges, under certain conditions and in varying degree, may be of value in navigating the inland and Gulf Intracoastal Waterways, where they are towed astern on a hawser, that they may be helpful to some extent in preventing or breaking a sheer. Others are just as positive that skegs on barges are of no value and may even be a hindrance to navigation. There is no unanimity of opinion on this question, and the testimony along these lines is highly speculative.

■ The design and specifications for the conversion of these barges from dry cargo to oil tank barges were placed in the hands of competent engineers, including those of the Inland Waterways Corporation and the United States Army Engineers. Before they were adopted all things bearing on seaworthiness, including skegs, were considered. The fact that the barges were to be used on the Gulf Intracoastal Waterway, where barges as a general rule are towed astern on a hawser, was not overlooked. The United States Coast Guard, charged under the law with responsibility concerning seaworthiness of vessels, did not require skegs, nor did the American Bureau of Shipping, the largest classification society in the United States. These agencies, through competent inspectors, supervised the conversion job, which was performed by experienced shipbuilders. Each barge, after conversion, was given the highest rating and certificated for the carriage of oil in bulk. What more could be required of petitioner? Indeed, it exercised a very high degree of care. These things considered, claimant has wholly failed to prove skegs are necessary to a seaworthy barge.

■ A barge owner is not negligent through his omission to equip barges with the latest appliances or best devices, but only such as are reasonably required for the vessel's purposes. The Commonwealth, D.C., 31 F.2d 142; Christopher v. Grueby, 1 Cir., 40 F.2d 8, certiorari denied 282 U.S. 876, 51 S.Ct. 80, 75 L.Ed. 774; Adams v. Bortz, 2 Cir., 279 F. 521; Hanrahan v. Pacific Transport Co., Ltd., 2 Cir., 262 F. 951. And seaworthiness does not comprehend the best form of construction and perfection, but only that the vessel be so staunch and strong as to be able to resist the ordinary action of the sea during the voyage, without loss or damage to the cargo. There are many supporting authorities for this. It is necessary to refer only to Spencer Kellogg & Sons v. Buckeye S. S. Co., 6 Cir., 70 F.2d 146, certiorari denied 293 U.S. 562, 55 S.Ct. 74, 79 L.Ed. 663, and cases therein cited.

Though a sizeable sum of money has been paid to settle the charterer's liability as a result of the collision herein, a fact which might be considered as highly significant, it is unnecessary to a decision here to determine the part played by the tug Mars and her crew. It is undisputed, however, and proper to say that the tug's pilot, though an experienced tug boat man, had never operated a tug over the Caribelle run before. By the greater weight of the evidence, there was at the time of the collision a northwest wind and cross-current in the river running under the bridge, with which the pilot was not familiar, or could not see due to poor visibility. These things, no doubt, contributed to cause the lead barge to sheer and strike the fender system and bridge. It would be pure speculation to say that skegs on the barges under the prevailing condition would have prevented or broken this sheer. At best, under the proof in this case, the cause of the collision is left in doubt. Commercial Mollases Corporation v. New York Tank Barge Corporation, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89. It is not contended the

barges were otherwise deficient in equipment.

■ The law seems well settled that a tug boat is responsible for the proper navigation of its unmanned tow. Nearly a hundred years ago, the Supreme Court in Sturgis v. Boyer et al., 24 How. 110, 122, 65 U.S. 110, 16 L.Ed. 591, said:

"But whenever the tug, under the charge of her own master and crew, and in the usual and ordinary course of such an employment, undertakes to transport another vessel, which, for the time being, has neither her master nor crew on board, from one point to another, over waters where such accessory motive power is necessary or usually employed, she must be held responsible for the proper navigation of both vessels; and third persons suffering damage through the fault of those in charge of the vessels must, under such circumstances, look to the tug, her master or owners, for the recompense which they are entitled to claim for any injuries that vessels or cargo may receive by such means."

Later, the Supreme Court approved and followed Sturgis v. Boyer et al., in The Eugene F. Moran, 212 U.S. 466, 29 S.Ct. 339, 53 L.Ed. 600. See also Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern District Terminal, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130, and cases cited therein. There is much other respectable authority for this rule.

It follows that petitioner, Defense Plant Corporation, was in no wise responsible for claimant's damage, and is entitled to full exoneration from liability.