## GOGGIN v. UNITED STATES.

### No. 6874.

United States District Court
S. D. California
Central Division.
April 14, 1948.

McCutchen, Thomas, Matthew, Griffiths & Greene and George E. Toner, all of Los Angeles, Cal., for libelant.

James M. Carter, U. S. Atty., of Los Angeles, Cal., Keith R. Ferguson, Sp. Asst. to Atty. Gen. and Bernard B. Laven, Asst. U. S. Atty., of Los Angeles, Cal., for respondent.

MATHES, District Judge.

■ At the outset of the trial, the respondent requested a ruling on its petition, set out in the answer, for limitation of its liability to the value of the LCVP–18, a landing craft, being one of the boats carried as a part of the equipment of the USS Union, a large Navy attack transport, also owned by the respondent. The libelant contested the right to limit liability to the value of the landing craft, contending that it was at the times alleged in the libel a part of the equipment of the USS Union and was engaged in the business of that vessel, urging that the value of the USS Union must also be surrendered. After full argument the Court entered its ruling that in this action for damages, arising out of alleged negligence of the operators of the LCVP–18 in passing close aboard the libelant's fishing vessel Violet and her tow the fishing vessel Ivan, by reason of the swells caused by the LCVP–18, the respondent, having no contractual or employer and employee relationship to the libelant, is entitled to limit its liability, if any, to the value of the LCVP–18, under the decisions of Liverpool, Brazil & River Plate Steam Navigation Company v. Brooklyn Eastern Dist. Terminal, 251 U.S. 48, 53, 54, 40 S.Ct. 66, 64 L.Ed. 130; Sacramento Navigation Company v. Salz, 273 U.S. 326, 332, 47 S.Ct. 368, 71 L.Ed. 663; Standard Dredging Company v. Kristiansen, 2 Cir., 67 F.2d 548, 551.

The cause was submitted on the testimony taken in open court, depositions theretofore taken together with the exhibits offered in evidence in connection therewith, and on oral argument on April 5, 1948. The Court being fully advised in the premises and having made its ruling limiting the liability, if any, of the respondent to the value of the LCVP–18, and having delivered its oral opinion, now makes the following findings of fact and conclusions of law:

## Findings of Fact

I. The Court finds that on the 10th day of August, 1946, and at the times referred to in the libel, Wesley Grooms was the owner and operator of the fish boat Violet and that since the filing of the libel in this action he has been decreed bankrupt and his trustee in bankruptcy has been substituted as libelant herein; that the said fish boat Violet is a fishing vessel 46 ft. in length; beam, 13.5 ft.; draft, 3.7 ft; cabin type commercial fishing vessel with a Caterpillar (Deisel) engine of 70 H.P.

II. The Court finds that respondent United States of America is and, at all times mentioned in the said libel, was a sovereign nation and owned and operated a single screw landing boat known and described as LCVP–18, hull No. C-80153, of 36 ft. 9 in. length; breadth, 9 ft. 10 in.; and draft, 29 in., constructed of wood with a ramp bow, powered by a Gray Marine Motor of 225 H.P.

III. The Court finds that the respondent United States of America is and, at all times mentioned in said libel, was the owner and operator of the USS Union (AKA–106) of the cargo-transport-attack type and that the said LCVP–18 was assigned to and was one of the landing boats of the USS Union, carried aboard said vessel as part of its equipment. That on the 10th day of August, 1946, the USS Union and the USS Washburn, Naval attack transports, owned by the respondent United States of America, were nested between buoys Nos. 46 and 47 in the inner harbor of San Diego, California, and that the said LCVP–18 was on the afternoon of August 10, 1946, being operated as a pool vessel for the purpose of ferrying personnel of the USS Union and the USS Washburn to and from said vessels and to and from the Navy landing float in San Diego Bay.

IV. The Court finds that the fish boat Violet, being undermanned in that she had aboard the Captain, Wesley Grooms, and only one instead of two deck hands, on the 10th day of August, 1946, towed the fishing boat Ivan, a boat of approximately the same length, beam, and depth as the Violet, into the harbor of San Diego, stopped at

the immigration station, and there changed the tow from astern to an alongside tow, placing the Ivan on the starboard side of the Violet and lashing the two vessels together by a single line made up of a 3-inch tow line which the Violet had used in towing the Ivan astern. The line was fastened to the forward bow bitt of the Violet, thence to the bow bitt of the Ivan making the bow breast line, thence lashing the line to the housing on the mid-section of the Violet, thence to the stern bitt of the Ivan, thence as a breast line to the stern bitt of the Violet, thence to the mid-section of the Ivan, and thence to the forward bow bitt of the Violet. The Violet then proceeded with her tow from the immigration station up the bay on the port or lefthand side of the channel at a distance of 75 or 80 feet from the pier head line on the port side of the channel until about the hour of 4:00 P.M. August 10, 1948, when the Violet and the Ivan were at a point opposite buoys Nos. 25 and 26 and approximately one-half mile from their destination at San Diego Packing Company dock, the LCVP–18 appeared off the starboard bow of the Ivan approaching on an opposite parallel course.

V. The Court finds that on August 10, 1946, at approximately the hour of 4:00 P.M., visibility being unlimited and with no appreciable affecting wind or tide, the LCVP–18 operated by a qualified coxswain and bowhook, with no other persons aboard, proceeding on her own starboard side of the channel, passed the fishing vessels Violet and Ivan starboard to starboard on a reciprocal opposite course, at a speed of eight knots through the water, at a distance of 150 feet abeam of said vessels at a point west of the Union Oil Dock and opposite to buoys Nos. 25 and 26 in San Diego Bay; that at the time of said passing, the fishing vessel Violet was proceeding at a distance of approximately 80 feet from the pier head line on her port side of the narrow channel, the channel at that point being only 500 yards wide, under her own power at a speed of approximately two to three knots through the water with the Ivan improperly and negligently lashed abreast under tow, the Ivan's engines being inoperative, the crew of the Ivan con-

sisting of the captain and one deck hand being stationed on deck at midships with no one at the wheel, which was not lashed down, and the rudder being free to swing either way; that prior to and at the time of said passing, no signals either by way of flag or whistle or any other recognizable signal was given by the Violet or Ivan, nor were any signals given by the LCVP–18; that after said passing the operators of the LCVP–18 observing no damage to the said fishing vessels or any need for assistance preceeded to her destination, the Navy landing pier, picked up passengers and returned back over the same course passing the Violet and Ivan, and observed that said vessels were proceeding on their way apparently without any damage to either of them.

VI. The Court finds that the captain of the Violet, Wesley Grooms, stationed at the wheel on the topside of the cabin with his deck hand, observed the approach of the LCVP–18 at a distance of approximately 200 yards and cut down the speed of the engine to slow speed; and, as the LCVP–18 was passing abeam, he threw the clutch out of gear, cutting off all the power, put his wheel hard right, and then he and his deck hand jumped down to the bow deck, leaving the wheel unattended and the vessel without power, drifting in the wake of the LCVP–18, which caused the bow breast line to pull out the bow bitt of the Ivan, allowing the bows of the Violet and Ivan to drift apart, and the vessels to collide with each other causing damage to the Violet.

VII. The Court finds that the disabled Ivan was not properly tied up for towage by the Violet and that if the tie-up had been proper, the damage complained of in the libel would not have been occasioned. The tie-up of the Ivan alongside the Violet was improper in that the bows of the two vessels were abreast. A single continuous line was used for lashing the vessels together which could not be readily slackened; that the vessels were lashed so tightly together that any small wave which would cause the vessels to roll would either break the line or pull out the bitts to which the line was attached; and that the rubber tire fenders were not sufficient to protect

against damage. That the tie-up of the two vessels was such that the Violet was seriously restricted in her ability to maneuver to meet the traffic encountered. There was no restriction or prohibition against the towing of the Ivan astern of the Violet which was a safe method of towing in San Diego Bay. The captain of the Violet knew at the immigration station when the tow was made up, that the tie-up was improper, that he would and actually did encounter traffic in the narrow channel of San Diego Bay, and that almost any wave or wake from a passing vessel would cause the tight bow breast line to break or pull out the bitts to which it was attached, and that the rubber tire fenders would not offer sufficient·protection against damage. Knowing this condition, he did not at any time give to the LCVP–18 any recognizable signal of his situation.

VIII. The Court finds that the Violet and her operator were guilty of the following faults, which directly contributed to and were the proximate cause of the damage complained of:

1. That the Violet failed to blow her whistle or give any recognizable signal to the LCVP–18 and that without such signal the LCVP–18 was entitled to maintain her course and speed.

2. That the tie-up of the disabled Ivan to the Violet was improper and not in conformity to good seamanship. The Violet should have towed the Ivan astern which was a safe and practicable method of towing.

3. That the Violet and Ivan were proceeding on the wrong side of the channel in violation of Article 25 of the Inland Rules, Title 33, § 210, U.S.C.A.

4. That the Violet had a regular complement of two deck hands and the captain and that in proceeding to tow the Ivan with only one deck hand and the captain aboard, the Violet was undermanned, with insufficient crew to properly handle the vessel and the tow lines.

IX. The Court finds that libelant has failed to sustain the burden of proving fault or negligence on the part of the LCVP–18 or her operators contributing to or causing the damages complained of in the libel; that the speed of the LCVP–18 of eight knots was not excessive and she properly maintained her course and speed when passing the Violet and Ivan.

X. The Court finds that the value of the LCVP–18 on August 10, 1946, was the sum of $2,500. In arriving at this value the Court has considered the original cost of the LCVP–18; that although other LCVP's of the same type and construction were sold for $750 each, they were apparently not in such good physical condition as the LCVP–18; that the LCVP type craft are expendable and that the LCVP–18 was approximately two-thirds consumed at the time of the incident.

## Conclusions of Law

I. That the respondent is entitled to limit its liability, if any, to the value of the LCVP–18 in the sum of $2,500.

II. That the breakup of the tow and the resulting damage to the Violet were proximately caused by the sole faults of the Violet and Ivan and their officers and crew.

III. That the respondent is entitled to a decree dismissing the libel with costs to respondent.

## Final Decree

This cause having duly come on to be heard on the 1st, 2nd and 5th days of April, 1948, before the Honorable William C. Mathes, Judge presiding, upon the pleadings and proofs and the libel having been dismissed as to the respondent, United States of America; and said cause having been argued and submitted to the Court for decision, and the Court after due deliberation having rendered its decision directing a decree dismissing the libel herein, with costs to the respondent, United States of America, and written findings of fact and conclusions of law having been duly made in accordance therewith,, and respondent's costs having been duly taxed in the sum of $171.40;

Now on motion of proctors for the respondent, United States of America,

It is ordered, adjudged and decreed that the libel herein be and the same is hereby dismissed on the merits, and that the respondent, United States of America recover

of and from the libelant, George T. Goggin, Trustee in Bankruptcy for Wesley Grooms, a bankrupt, the sum of $171.40, costs as taxed, which sum shall bear interest from the date of entry of this final decree until paid, and that the said respondent have judgment and execution against said libelant therefor;

It is further ordered, adjudged and decreed that unless this decree be satisfied or proceedings thereon be stayed by an appeal within ten days after service of a copy of this decree with notice of entry on the libelant or his proctor, the respondent have execution against the libelant's goods, chattels and lands forthwith to satisfy this decree.