**OIL TRANSPORT COMPANY, Incorporated, and Charles C. Smith Company, Appellants,**

v.

**Lennis VERRET et al., Appellees.**

**No. 18155.**

United States Court of Appeals
Fifth Circuit.

May 17, 1960.

Rene H. Himel, Jr., Paul A. Gaudet, Eberhard P. Deutsch, William S. Stone, New Orleans, La., for appellants. Deutsch, Kerrigan & Stiles, New Orleans, La., of counsel.

James J. Morrison, Arthur A. De La Houssaye, Raymond H. Kierr, Jack C. Benjamin, New Orleans, La., Browne & Rault, New Orleans, La., of counsel, for appellees.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

■ This appeal presents the question whether the failure of the bareboat charterer and owner to deposit any sum representing the value of a sunken vessel considered by them to be worthless, or approved security therefor, or to transfer to a trustee their interests in the vessel within six months after the filing of claims required a dismissal of limitation and exoneration proceedings filed by appellants. Charles C. Smith Company, the owner, and Oil Transport Company Inc., the bareboat charterer of the towboat Jane Smith, following the loss of the ship, filed their separate limitation proceedings under the provisions of 46 U.S. C.A. § 183(a).[1]

In neither proceeding was the Jane Smith or the barges being towed by her at the time of the loss surrendered to a trustee appointed by the Court, nor was a deposit or security in any amount filed at the time of the filing of the proceedings or within a period of six months after claimants had filed their claims. This apparent disregard of the terms of the statute was at least partially explained by allegations in the petitions to the effect that the Jane Smith was a total loss.[2] This allegation was supported by affidavits as required by the rules. The omission was further sought to be justified by an offer contained in the petition to give a stipulation with sufficient security for the payment into Court of the amount of value of petitioners' interest in the Jane Smith "if said towboat or its wreckage, strippings or proceeds should be saved, and should be found upon reference, to have had any value while sunk, whenever such reference may be ordered", as provided by the statutes and applicable rules. The petition made no mention of the interest of the appellees in the barges which were a part of the tow at the time of the accident and which were owned by Smith and chartered by Oil Transport Company.

Appellees filed their several motions to dismiss the limitation and exoneration proceedings, asserting that the failure of the petitioners to surrender the vessel or to file a stipulation securing the interest of petitioners within six months of the filing of the claims deprived the Court of jurisdiction of the proceedings.

Subsequently, the Jane Smith was raised and the Trial Court required the filing of a stipulation and security by petitioners in the sum of $25,000. This was later raised to $170,000, the amount of $145,000 having been added by the

---

1. Section 183(a) provides as follows: "The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage or forfeiture, done, occasioned or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

2. This allegation was as follows: "Efforts will be made to raise and save the Towboat Jane Smith, but there is grave doubt as to whether that will be possible at all, or at a cost not exceeding the value recovered. For present purposes said vessel must be deemed a total loss, and her wreckage, strippings and proceeds have no value, and there is no freight pending, recovered or recoverable, all as will appear from the affidavits annexed hereto."

Trial Court by reason of the fact that appellants had potential claims against the Texas and Pacific Railroad Company for loss of the vessel and crew. Thereupon, the Court overruled the motion to dismiss for want of jurisdiction over the proceedings.

Thereafter a full hearing was had on the appellants' claim for limitation of liability. Upon the conclusion of this hearing, after which the Trial Court made findings of fact, the court held that, by their proof, appellants had established their right to limitation but that they were denied the benefits of the limitation statute because of their failure to comply with that part of the statute which required a deposit with the Court of a sum equal to the amount of interest of the owner or approved security therefor or a transfer to a trustee of appellants' interest in the vessel within six months of the filing of a claim. The Court based this on the fact that at the time the petitions were filed they incorrectly omitted the fact that a small boat belonging to the Jane Smith of the value of $100 was salvaged, that no value was assigned for the barges that were not damaged and that no amount was tendered or security offered for the value of a claim by appellants against the Texas and Pacific Railroad whose draw-bridge was the site of the damage.

Accepting as we must, since they were based on substantial evidence, the Trial Court's findings that the vessel was in no way unseaworthy, we affirm that part of the Court's decision which found that the right to limitation had been established if the Court had acquired jurisdiction to grant it on the pleadings and record which we have outlined above. This then, presents the clear cut question whether appellants' failure actually to tender the sunken vessel to a trustee or to tender an amount which, under its allegations, would be zero, or tender security therefor, in light of the fact that ultimately it appeared that there were values assignable to appellants' interests in the vessel, was jurisdictional in the sense that the Court could not try this limitation proceeding after subsequently requiring the filing of the stipulations for $170,000.

The Trial Court based its decision that the failure of appellants to surrender the vessel to a trustee or to file an interim stipulation covering her value deprived the Court of the right to grant limitation on the terms of the statute itself, supra page 1, and on the case of Petition of Goulandris, 2 Cir., 140 F.2d 780. The Court also noted a comparison with Black Diamond Steamship Company v. Robert Stewart & Sons, Ltd., 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754. Claimants here also urge the Goulandris case as requiring affirmance of the Trial Court's order dismissing the petitions. No case is cited in which the Court has held that where a petition for limitation is filed correctly asserting that the vessel [3] had sunk and must be taken as a total loss, but it was later ascertained that petitioners' interest in the vessel was in fact of substantial value, there being no finding that the failure to stipulate a value initially was improperly motivated, the Admiralty Court would have no jurisdiction to proceed with the limitation proceedings upon a subsequent filing of a stipulation subjecting a substantial amount to the claims of the claimants.

The statute itself is not couched in such terms as to require a holding that the failure complained of deprives the owner of the right granted him under Section 183(a) to claim limitation. The procedural requirements are stated in U.S.C.A. § 185, which reads as follows:

"The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions

3. The proposition relied upon by the Trial Court and claimants that the term "vessel" in the circumstances of this case includes the barges as well as the tug and no mention was made of the barges will be discussed below.

of this chapter and the owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 183 of this title, or (b) at his option shall transfer, for the benefit of claimants, to a trustee to be appointed by the court his interest in the vessel and freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 183 of this title. Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease."

We think it quite plain that if nothing had been involved in the collision except the tug Jane Smith and if it was clear that no tort claim existed in favor of appellants against the railroad and if there had been no life boat of the nominal value of $100 recovered, the requirements of this statute would have been completely satisfied by the allegations actually contained in the petitions, stating that the Jane Smith was at the bottom of the river and was worthless, when coupled with an offer to stipulate in such amount as was later determined to represent any value recovered. We think it not at all correct to say that under these circumstances there would be no res in Court. Obviously it would add nothing to the validity of appellants' petition for them to file a stipulation in a nominal amount.

We then come to the question of whether, assuming what has not been proved, that is, that a valid tort claim existed on behalf of appellants against the railroad company,[4] the failure of the appellants to "surrender" such claim as they had against the railroad company would be fatal to the acquisition of jurisdiction over the proceedings.

The next question is whether the failure to surrender the barges or file a stipulation for the value of appellants' interest in the barges would deprive the Court of jurisdiction.

We finally come to the question whether the failure of appellants to surrender a life boat of the value of $100, which was recovered would deprive the Court of jurisdiction.

█ As has already been pointed out, the Trial Court did not make a finding to the effect that a valid claim had existed on behalf of appellants in the nature of a third party claim of the Jane Smith against the railroad. Even if the Court had made such finding, no finding has been made, and none would be permissible on the record before the Trial Court, that appellants intentionally waived or surrendered any rights against the railroad by permitting the cause of action to prescribe. Moreover, as pointed out by this Court in Geotechnical Corp. v. Pure Oil Co., 5 Cir., 196 F.2d 199, the value of this claim could be added after the six month period. It cannot, therefore, be said, we think, that on the record before the Trial Court it could determine that the failure to make any reference in their petitions to the possible claim against the railroad would amount to a failure of appellants to comply with the requirements of Section 185.

█ The Trial Court also commented in its finding on the failure of appellants to surrender the barges, both of which had the same charterer and owner as the Jane Smith. The Court cited for holding

4. With deference to the Trial Court's reference in its findings to the validity of the claim against the railroad company as owner of the bridge, it should be pointed out that the allegations of the petition did not expressly charge the railroad company with liability for the loss. More-over, the Court in its conclusions placed the entire blame on Captain Weldon, the pilot, and Captain Verret, the master of the Jane Smith. Their management of the vessel was termed by the Court "gross negligence, unworthy of experienced seamen." [178 F.Supp. 48, 53.]

that they "should have been surrendered": Sacramento Navigation Company v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663; Standard Dredging Company v. Kristiansen, 2 Cir., 67 F.2d 548, and Short v. The Columbia, 9 Cir., 73 F. 226. While we do not pass upon the correctness of this holding by the Trial Court,[5] it is noted that the Court itself did not require the stipulation, subsequently filed by appellants on order of the Court, to include the value of these barges. Moreover, it is plain that, absent any finding of bad faith on the part of appellants in failing to recognize the doubtful legal principle announced by the Trial Court, it cannot be said that their failure to surrender the barges amounted to a failure to comply with the requirements of Section 185.

Finally we come to the matter of the lifeboat. Even though this nominal item was not adequately covered by the allegation that the vessel was sunk and a total loss, and her wreckage, strippings and proceeds had no value, but upon salvage would be made the basis of the filing of a stipulation of its value if, upon reference any was found, the failure to file a stipulation in the sum of $100 in light of the posture of the proceedings could not be determinative of the jurisdiction of the Court to proceed in the matter. So far as appears from the record the allegations of no value were in good faith. The matter was then ripe for claimants to traverse the allegations and require the filing of a stipulation representing the true value of the vessel if they took issue with the petitioners' allegation of no value.

We think there is nothing in the Goulandris case, supra, that would require a holding that in the circumstances here present the Trial Court lacked jurisdiction to entertain jurisdiction of the limitation proceedings. The Court pointed out expressly in that case that the entire proceedings failed to comply with the requirements of the statute in that they did not tender into court any res, the vessel involved there actually having substantial value but being merely physically unavailable to be surrendered. Here the petitioners clearly tendered the vessel alleged to be worthless and tendered such stipulation as, upon reference, the Court might find the true value to be. We think this brought the case more clearly under the doctrine announced by the Supreme Court in the Black Diamond Steamship Company case, supra, where, the petitioners having filed a stipulation less than one-third of the correct amount, the Supreme Court held that the Trial Court erred in dismissing the limitation proceedings and directed that they be reinstated and that the petitioners be permitted to amend their stipulation to the correct amount. The Court expressly stated that the filing of a correct stipulation was not jurisdictional.

It is not entirely clear what disposition the Trial Court made of the Smith Company's petition for exoneration. In its opinion the Court stated "Since the owner is exonerated from liability, no determination of the validity of his limitation petition is made herein". Nevertheless, in the final decree the Court held expressly that the petitions for limitation of liability filed by Oil Transport Company, Inc., and Charles C. Smith Company, were denied. It is clear that the denial of the petitions for limitation by the Trial Court were based on its conclusion that there had been a failure of petitioners to comply with the statutory requirement of a surrender of the vessel or the alternative filing of the stipula-

5. It is quite doubtful that in an action in rem for death or injury to the crew the principle of "integrated tow" announced by the Supreme Court in the Sacramento Navigation case is applicable. The Supreme Court in that case distinguished its earlier decision in Liverpool, etc., Navigation Company v. Brooklyn Eastern Dist. Terminal where it was expressly held in a limitation proceeding as against a tort claimant that the tug alone was the vessel at fault and the barges need not be surrendered. Liverpool, etc., Navigation Company v. Brooklyn Eastern Dist. Terminal, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130.

tion. This conclusion we have found to be in error.

The judgment is therefore Reversed and the cause remanded to the Trial Court for further proceedings not inconsistent with this opinion.