**UNITED STATES, as owner of UNITED STATES COAST GUARD VESSEL CHILULA**

v.

**TUG PARRIS ISLAND, her engines, boilers, etc., in rem and T-2 TANKER, in rem.**

**UNITED STATES, as owner of United States Coast Guard Vessel Chilula**

v.

**The TUG MANIE, her engines, boilers, in rem**

v.

**The CARTERET TOWING CO., Inc., in personam, in a cause of collision civil and maritime.**

**Nos. 251, 253.**

United States District Court
E. D. North Carolina,
New Bern Division.

Feb. 1, 1963.

---

79. 35 U.S.C. § 116; Rules of Practice of the Patent Office, Rule 45(b).

See also 215 F.Supp. 149.

Robert H. Cowen, U. S. Atty., Eastern District of North Carolina, Raleigh, N. C., Alan Raywid, Attorney, Admiralty & Shipping Section, United States Department of Justice, Washington, D. C., for libellants in consolidated actions.

George H. McNeill, Morehead City, N. C., Robert M. Hughes, III, of Seawell, McCoy, Winston & Dalton, Norfolk, Va., for claimant Linea de Navegacion Rio S. A., in personam, and tug Parris Island, in rem.

C. R. Wheatly, Jr., Beaufort, N. C., John G. deRoos, of Bigham, Englar, Jones & Houston, New York City, for Standard Dredging Corporation, respondent claimant, in rem, T–2 tanker midsection.

George T. Clark, Jr., of Rountree & Clark, Wilmington, N. C., for Carteret Towing Co., in personam, respondent claimant; and, proctor for tug Manie, in rem.

John P. Harper, of Worthington, White & Harper, Norfolk, Va., A. D. Ward, New Bern, N. C., for A. T. Piner, impleaded respondent and impleading petitioner.

L. A. Stith, of Barden, Stith & McCotter, New Bern, N. C., Kirlin, Campbell & Keating, New York City, for Standard Dredging Corporation, in personam, impleaded respondent.

LARKINS, District Judge.

These actions arose from the result of a collision which occurred on or about January 13, 1958, in the Harbor of Morehead City, North Carolina, when a T–2 tanker midsection in tow of the Honduran tug "PARRIS ISLAND" and the local harbor tug "MANIE" struck and damaged the moored United States Coast Guard Cutter "CHILULA".

## FACTS

The Honduran ocean-going tug "PARRIS ISLAND", owned and operated by Linea de Navegacion Rio S.A., was under time charter to Standard Dredging Corporation, claimant of the T–2 tanker midsection.

The tug "PARRIS ISLAND" had departed sometime prior to January 13, 1958, with the T–2 tanker midsection in tow, from the Port of Baltimore bound for Santiago de Cuba. Weather conditions caused the tug "PARRIS ISLAND" to put in at Morehead City, North Carolina, where the T–2 tanker midsection was put at anchor. The tug "PARRIS ISLAND" then continued with another tow to its destination and returned some days prior to January 13, 1958 to Morehead City, North Carolina. Weather conditions again made it inadvisable for the tug to continue with the T–2 tanker midsection to Santiago de Cuba and a representative of the owner of the T–2 tanker midsection directed that until more favorable weather conditions would prevail, the T–2 tanker midsection should be taken to a dock site in Morehead City, North Carolina.

The tug "PARRIS ISLAND", being of Honduran registry and under command of a Honduran master, required for the shifting of the T–2 tanker midsection from the anchorage to the dock site at Morehead City, North Carolina, the services of a duly licensed North Carolina pilot, pursuant to the applicable provisions of the North Carolina Compulsory Pilotage Statute.

On January 13, 1958, A. T. Piner, a duly licensed North Carolina pilot, boarded the tug "PARRIS ISLAND", supervised the makeup of the tow, placed a man on board the T–2 tanker midsection to relay his orders to the tug "MANIE", which was placed by pilot Piner on the T–2 tanker midsection's starboard quarter. The flotilla then left the anchorage with pilot Piner at the helm. With him on the bridge were the master of the tug, a helmsman and a Mr. Theo. P. Pearson, Vice President of Standard Dredging Corporation. Mr. Pearson was on board the tug "Parris Island" as the owner's representative for the T–2 tanker midsection. The tug "PARRIS ISLAND" was towing the T–2 tanker midsection on a hawser connected to a bridle leading from the T–2 tanker midsection and the trip from the anchorage was uneventful until the T–2 tanker midsection had come abreast of the United States Coast Guard Cutter "CHILULA", which was moored starboard side to. At this point the T–2 tanker midsection came into contact with the port side of the United States Coast Guard Cutter "CHILULA".

The T–2 tanker section consisted of a 293-foot tanker body, without bow and stern sections, with chain bridles secured onto the forward towing bits and a wire cable bridle secured on the stern-end section. The tanker midsection towed by the tug "PARRIS ISLAND" as a "dumb barge". She was without motive power, without steering facilities and without a crew on board.

Following the collision, the United States of America, on or about January 15, 1958, filed a libel *in rem* against the tug "PARRIS ISLAND", her engines, boilers, etc., and the T–2 tanker, alleging damages in the amount of $35,000.00. Pursuant to the prayer of the said libel, the tug "PARRIS ISLAND" and the T–2 tanker midsection were attached on or about January 15, 1958. Linea de Navegacion Rio S.A. thereupon appeared and filed a Claim of Owner of the tug "PARRIS ISLAND", and Standard Dredging Corporation appeared and filed a Claim of Owner on behalf of the T–2 tanker midsection. After appropriate security was arranged for, the attachments were lifted.

Standard Dredging Corporation, as claimant of the T–2 tanker midsection, has now moved this Court for summary judgment dismissing the libel of the United States of America as against the T–2 tanker midsection under Rule 58 of the Rules of Practice in admiralty and maritime cases, adopted by the Supreme Court on April 17, 1961, asserting that

there can be no liability in law on the part of a "dumb barge" which is without motive power, without steering and without crew and where the navigation of such "dumb barge" is under the exclusive control of the towing tug and those in charge of her.

Claimant Standard Dredging Corporation makes this motion notwithstanding the fact that it was the T–2 tanker midsection which came into contact with the United States Coast Guard Cutter "CHI-LULA", on the basis that the T–2 tanker midsection was, at most, a passive instrument in the hands of the tug "PAR-RIS ISLAND" and those in charge of her. Claimant Standard Dredging Corporation has asserted that, for the purpose of liability, the passive instrument of the harm does not become one with the actively responsible vessel, solely by reason of being attached to it.

### CONCLUSIONS OF LAW

■ A vessel will be liable *in rem* if its negligence causes damage to other vessels. However, the vessel is, herself, not liable, even though she is in collision, for the faults of an independent contractor such as a towing company whose tugs are in sole charge of her navigation. The Doris Eckhoff, 2 Cir., 50 F. 134; The Barendrecht, 2 Cir., 9 F.2d 614; The Chicago-Alvena, 2 Cir., 78 F. 819, aff'd. 78 F. 924; The John Fraser, 62 U.S. 184, at p. 194, 16 L.Ed. 106, where the Court, speaking through Chief Justice Taney, said:

"And as this collision was forced upon the John Fraser by the controlling power and mismanagement of the tug, and not by any fault or negligence on her part, she ought not to be answerable for the consequences."

See, also, Mr. Justice Holmes, in Liverpool, etc., Nav. Co. v. Brooklyn Terminal, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130:

"The car float was the vessel that came into contact with the Vauban, but as it was a passive instrument in the hands of the Intrepid that fact does not affect the question of responsibility * * * for the purposes of liability the passive instrument of the harm does not become one with the actively responsible vessel by being attached to it."

See, also, text and cases cited in Griffin on Collision, 1949, Chap. XXII, Liabilities in personam and in rem, and particularly Sec. 244: and Chap. XIII, Tug and Tow, particularly Sec. 178.

■ Proctor for the United States insists that liability may be imposed upon the T–2 tanker midsection because Mr. Theo. P. Pearson, a Vice President of claimant Standard Dredging Corporation, had been active in obtaining the services of a North-Carolina pilot. Since the "PARRIS ISLAND" was a foreign vessel under registry, it was required by General Statutes of North Carolina, § 76–33 to take on the services of a North Carolina state pilot, for whose acts the tug "PARRIS ISLAND", and not the T–2 tanker midsection, became liable *in rem*. As is said in Griffin on Collision, Sec. 194, at p. 444:

"The admiralty law of this country personifies the vessel and holds 'that the vessel, in whosesoever hands she lawfully is, is herself considered as the wrongdoer liable for the tort and subject to a maritime lien for the damages' (Ralli v. Troop, 157 U.S. 386, 403, 15 S.Ct. 657, 39 L.Ed. 742 (1894); to same effect the China, 7 Wall. ((74 U.S.)) 53, 69 ((1868)); the John G. Stevens, 170 U.S. 113, 123, 18 S.Ct. 544, 42 L.Ed. 969 ((1898)); the Barnstable, 181 U.S. 464, 21 S.Ct. 684, 45 L.Ed. 954, 467 ((1901)) ). Logically, it might well have been held that the ship, like her owner, is not liable for the negligence of a servant whose employment is forced upon her by law. The question was, however, definitely settled to the contrary in the China, 7 Wall. (74 U.S. 53 ((1868)) ). In that case, the China, outward bound from New York and still in pilotage waters, came into collision through the fault of her pilot alone. Suit was brought

**148**

against the vessel *in rem*. The court held, following earlier decisions of the lower Federal courts, that the pilotage was compulsory, but that nevertheless the vessel was liable. * * * "

■ Another contention made by proctor for the Government, to the effect that the T–2 tanker midsection was unseaworthy and as such may have contributed to or have been the cause of the collision, is unfounded. In the pleadings, papers and documents now before this Court, there is no allegation that any appurtenances of the T–2 tanker midsection employed in towing were defective, or that they in any manner contributed to the casualty. Furthermore, it is the towing tug that is responsible for the makeup of the tow. See, for instance, Griffin on Collision, Sec. 181, at p. 421, where it is said:

"The tug has duties with respect to the preliminary arrangements for towage. She must use due care to see that the tow is properly made up and that the hawsers are adequate." See also cases cited at page 421.

The T–2 tanker midsection, without motive power, without steering and without any crew responsible for the makeup of the tow, was thus as much a "dumb barge" as the "JOHN FRASER" and the carfloat referred to by Justices Taney and Holmes in The John Fraser, supra, and Liverpool, etc., Nav. Co. v. Brooklyn Terminal, supra. The Government has failed to raise any genuine issue of a material fact which would take the T–2 tanker midsection out of the classification of a "dumb barge" and accordingly it has failed to show any reasonable ground upon which liability for the damages sustained by the United States Coast Guard Cutter "CHILULA" can be attributed to the T–2 tanker midsection *in rem*.

■ There is no genuine dispute that the T–2 tanker midsection was a dead vessel, and under the rule laid down by the Supreme Court of the United States in the case of Sturgis v. Boyer, 24 How. 110, 65 U.S. 110, 16 L.Ed. 591, she can be no more responsible than so much freight: a decision which was specifically approved again by the same Court in the Eugene F. Moran, 212 U.S. 466, 29 S.Ct. 339, 53 L.Ed. 600. The law is equally clear, especially since the Amendments to Rules of Practice in Admiralty and Maritime Cases adopted by the Supreme Court of the United States on April 17, 1961, that a summary judgment may be rendered forthwith if the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law (Rule 58 of Rules of Practice in Admiralty and Maritime Cases). See, e. g., Christianson v. Gaines, 85 U.S.App.D.C. 15, 174 F.2d 534, stating:

"The purpose of the rule is to permit the trier to pierce formal allegations of facts in pleadings and grant relief by summary judgment when it appears from uncontroverted facts set forth in affidavits, depositions or admissions on file that there are as a matter of fact no genuine issues for trial." Id. at 536.

See, also, Creel v. Lone Star Defense Corp., 171 F.2d 964, stating:

" * * * a reasonable inference fairly deducted from an uncontroverted fact or number of facts may establish the existence of an ultimate fact that entitles one of the parties to judgment as a matter of law. When this happens, as it did in this case, and summary judgment is sought, Rule 56(c) requires that 'judgment * * * shall be rendered forthwith.' " Id. at 968.

There being no genuine issue as to any material fact, the motion of claimant Standard Dredging Corporation for summary judgment is granted, and the Government's libel against the T–2 tanker midsection *in rem* is hereby dismissed.

It is so ordered.