Petition of the UNITED STATES DREDG-ING CORPORATION, as owner of the MOTOR VESSEL NIP for exoneration from or limitation of liability.

No. 61–A–221.

United States District Court
E. D. New York.

Feb. 4, 1963.

Foley & Martin, New York City, for petitioner; Stephen J. Buckley, New York City, of counsel.

Dow & Stonebridge, New York City, for claimant Edward Kletter; Robert L. Mahar, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for claimant Raymond P. Scott, Jr.; Charles A. Van Hagen, Jr., New York City, of counsel.

Vincent & Grist, New York City, for claimant Charles Ulmer, Inc.; George J. Nashak, Jr., New York City, of counsel.

BARTELS, District Judge.

Claimants move to dissolve the temporary restraining order heretofore issued, enjoining prosecution of any further suits against the petitioner, United States Dredging Corporation (Dredging Corporation) as owner of the motor vessel "Nip" or in the alternative, ordering petitioner to surrender the value of the dredge "Magic City".

There does not seem to be any question of fact involved except insofar as it involves the deposition of Carl Nilsen, an employee of the Dredging Corporation, recently taken by claimants which, in effect, related to his services as a watchman aboard "Magic City". Since this witness was not an officer, director or managing agent of the Dredging Corporation, the latter is not bound by his testimony. Assuming it to be binding, the facts most favorable to the claimants appear to be as follows:

On the morning of September 25, 1960, the dredge "Magic City" owned by the Dredging Corporation, was anchored in Huntington Harbor, Long Island. Moored alongside the "Magic City" were three other vessels owned by the Dredging Corporation, "Nip", "Tuck" and "New Harbor". Nilsen was employed by the Dredging Corporation as a night watchman for the purpose, among other things, to check upon and watch the vessels tied to the dredge, as well as the dredge itself. Ordinarily two men were employed to perform the job of watchman aboard the dredge except on Sunday nights and one night during the week. One of Nilsen's duties was to start the engines on the three ves-

sels, including the "Nip", and to run them for half an hour in order to energize them during the watch.

On Sunday morning, September 25, 1960, Nilsen, while alone on the dredge, started the engines on the three vessels and thereafter went back aboard the dredge to continue his duties of checking on various parts of the dredge. While he was performing these duties the tender "Nip" was unattended and the lines securing the "Nip" to the dredge parted, causing it to run wild throughout the harbor, inflicting damage to three other vessels anchored in the harbor at the time.

On March 23, 1961, the Dredging Corporation filed a petition as owner of the "Nip" for exoneration from or limitation of liability pursuant to Section 183, 46 U.S.C.A., limiting its liability to the amount of its interest in the "Nip" with respect to any claim or claims arising out of the occurrence of the accident. Based upon this petition and the interim stipulation, the usual restraining order issued with respect to the prosecution of any and all other suits except the present proceeding. The facts being as above stated as far as claimants are concerned, it is not necessary to await a trial to determine whether the "Magic City" was an offending vessel. (Cf., Petition of Lake Tankers Corporation, S.D.N.Y.1955, 132 F.Supp. 504.) This issue may now be resolved as a matter of law.

The basis for the claimants' application is predicated upon Nilsen's deposition with respect to his duties and the conditions existing on the "Magic City" at the time the "Nip" broke loose. In brief, the claimants seek to place "Magic City" in the category of an offending vessel on the grounds that (a) it was the negligence of Nilsen, the night watchman of "Magic City", that caused the injury, and (b) there was insufficient personnel aboard "Magic City" to perform the duties of hourly inspections of all the vessels and also check and watch the running of "Nip's" engines.

In a proceeding under Section 183, 46 U.S.C.A.,[1] for limitation of liability, a distinction must be made between a violation of a duty involving contractual obligations and one involving tort liability to third persons. With respect to the former the owner is required to surrender all vessels devoted to the undertaking in the performance of the contract. The relevant inquiry in such case is what constitutes the vessel, as that term is used in the statute, engaged in effecting the contractual relationship. Sacramento Navigation Co. v. Salz, 1927, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663. When two vessels are engaged in a common venture and the duty violated is based upon the relation of Master and Servant, the physical connection of the craft is immaterial. Accordingly, separation of a barge upon which the injury to a dredge employee occurred, from the dredge which the barge supplied, did not prevent the surrender of both craft. Standard Dredging Co. v. Kristiansen, 2 Cir., 1933, 67 F.2d 548.

In the case of tort liability, however, the owner is required to surrender only the offending vessel. "When the shipowner's liability presupposes no preceding consensual relation with the injured party, but arises from a base invasion of his interests, it can be safely asserted that the surrender of only the damage feasant vessel is necessary in order to secure limitation." In re United States Dredging Corporation, 2 Cir., 1959, 264 F.2d 339, 340.[2]

---

1. "The liability of the owner of any vessel, * * * for any loss, damage, or injury by collision, * * * done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not * * * exceed the amount or value of the interest of such owner in such vessel * * *."

2. In that case an employee of the launch "Nip" was fatally injured by a flash fire on the "Nip" while it was engaged in fetching an empty barge to place alongside the dredge "Magic City". Since the injury arose out of a consensual relationship, application to limit liability to the "Nip" was denied.

■ In determining what constitutes an offending vessel, the fact that another vessel is physically connected to the vessel causing the harm does not convert both vessels into one unit for the purpose of assessing liability in tort. Something more must be present. The attached vessel must be at fault in causing or in contributing to the cause of the injury. In other words, each vessel must be treated separately in affixing tort liability. In the leading case of Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn Eastern District Terminal, 1919, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130, involving an injury to a vessel by a tug with two tows, Mr. Justice Holmes remarked that the cases "show that for the purposes of liability the passive instrument of the harm does not become one with the actively responsible vessel by being attached to it" (p. 52, 40 S.Ct. p. 66). In Deep Sea Tankers, Ltd., v. The Long Branch, 2 Cir., 1958, 258 F.2d 757, cert. denied 358 U.S. 933, 79 S.Ct. 316, 3 L.Ed.2d 305, two tugs with flotillas caused the grounding of a tanker in the East River by crowding and interference with the tanker's navigation. The court required the surrender of the tugs but refused, in the absence of active fault, to include in the limitation the craft in the flotillas although under common ownership.

■ But if the vessel attached, as in a tow, might have contributed to the accident, the value of both vessels must be surrendered although in separate proceedings. Petition of Lake Tankers Corporation, supra. Furthermore, where two vessels are engaged in a common enterprise, each with his own motive power and one vessel controls and directs the other vessel in such a manner that both are at fault in causing an accident, then both vessels must be surrendered. United States v. The Australia Star, 2 Cir., 1949, 172 F.2d 472. However, where the vessel in a collision is not under the control of the second vessel but is under the control of a commander who happens to be stationed on the second vessel at the time of the collision, then the second vessel is not responsible. United States v. S.S. Washington, 4 Cir., 1957, 241 F.2d 819, cert. denied Texas Co. v. United States, 355 U.S. 817, 78 S.Ct. 21, 2 L.Ed.2d 34.

In the light of the foregoing authorities, the "Magic City" as a fictitious jural entity must be found at fault in order to classify it as an offending vessel.[3] It was a stationary vessel, not operating as such under its own motive power, and it had no contact with the injured vessels. It was neither an active nor a passive instrument of harm. The negligence of the watchman upon the "Magic City" in the performance of his duties involving the "Nip" cannot be treated as the negligence of the "Magic City" unless it resulted in faulty conduct on the part of the "Magic City" as a vessel. Likewise, failure to retain sufficient personnel on the "Magic City" which might have caused a lack of supervision over the "Nip", cannot be attributed to the "Magic City" because there was no duty on the part of the "Magic City" as a vessel to supervise the "Nip" and there was no causative factor between the accident and any action or non-action on the part of the "Magic City". Common ownership and common employment must not be confused with common liability in tort. Cf., United States v. S.S. Washington, supra.[4] In deciding Standard Dredging Co. v. Kristiansen, supra, Judge Hand happened to point out that "If, for example, Kris-

3. "[I]n cases where the injury is to a third person, to whom the owner owes no duty based upon consent, he may limit his liability to the ship against which a maritime lien would arise from the wrong". Standard Dredging Co. v. Kristiansen, supra, at 549.

4. The fact that an employee who regularly works on one barge but happens to be working on another barge when he is injured is not sufficient to require the surrender of the first barge as well as the second although both were under common ownership. Murray v. New York Central Railroad Company, 2 Cir. 1961, 287 F.2d 152, cert. denied, 366 U.S. 945, 81 S.Ct. 1674, 6 L.Ed.2d 856.

tiansen had mishandled the barge's anchor and set her adrift, so that she fouled another barge nearby, or injured some one on board, we understand that the barge alone would have to be surrendered" (67 F.2d p. 550). Certainly the facts of this case are no stronger and justify no different result.

■ Finally, claimants argue that the accident occurred with the privity or knowledge of the petitioner and hence limitation is barred. They, however, do not indicate how such privity or knowledge exists. Based upon the admitted facts, there is no merit to this argument. " 'Privity and knowledge' is a term of art meaning complicity in the fault that caused the accident, and if the petitioner is free from fault his actual knowledge of the facts of the accident does not prevent limitation." Blackler v. F. Jacobus Transportation Co., 2 Cir., 1957, 243 F.2d 733.

■ The Court concludes that upon construing the allegations and the deposition most favorably to the claimants, the dredge "Magic City" cannot as a matter of law be deemed at fault and therefore should not be surrendered. Accordingly, claimants' motion is denied.

Settle order within ten (10) days on two (2) days' notice.